**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.  08-_____** |
| **v.** | : | **DATE FILED: December 18, 2008** |
| **KENNETH MITAN** | : | **VIOLATIONS:** |
| a/k/a "John Adams," | | 18 U.S.C. § 1349 (conspiracy to commit |
| a/k/a "John Miller," | : | mail and wire fraud - 1 count) |
| a/k/a "John Thompson," | | 18 U.S.C. § 1341 (mail fraud - 2 counts) |
| a/k/a "John Hill" | : | 18 U.S.C. § 1343 (wire fraud - 2 counts) |
| **FRANK MITAN** | | 18 U.S.C. § 1342 (using fake name in |
| a/k/a "Frank Mytan," | : | course of fraud - 1 count) |
| a/k/a "Frank Miller" | | 18 U.S.C. § 2 (aiding and abetting) |
| **BRUCE ATHERTON** | : | **Notice of forfeiture** |
| **CHARRO PANKRATZ** | | |

**INDICTMENT**

**COUNT ONE**

(Conspiracy to Commit Mail and Wire Fraud)

**THE GRAND JURY CHARGES THAT:**

**BACKGROUND**

At all times material to this indictment:

1.       Between at least in or about June 2005 through and including in or about February 2008, defendants KENNETH MITAN, a/k/a "John Adams," a/k/a "John Miller," a/k/a "John Thompson," a/k/a "John Hill," FRANK MITAN, a/k/a "Frank Mytan," a/k/a "Frank Miller," BRUCE ATHERTON, and CHARRO PANKRATZ victimized small-business owners in the Eastern District of Pennsylvania and elsewhere.  Using several corporate entities, the defendants identified small businesses for sale, used false and fraudulent pretenses to obtain

control of those businesses, and continued the fraud long enough to drain the businesses' assets

for both the defendants' personal enrichment and continuing promotion of the fraudulent scheme.

2.       Defendant KENNETH MITAN, a resident of Michigan, owned or

controlled various corporate entities, including the Williams Fund Private Equity Group

("Williams Fund").

3.       Defendant FRANK MITAN, a resident of Michigan, was defendant

KENNETH MITAN's father.

4.       Defendant BRUCE ATHERTON was a resident of Kentucky and an

attorney and business associate of defendant KENNETH MITAN.  Among other things,

defendant ATHERTON was the President of Commonwealth Management and Consulting

Services, which was incorporated in Kentucky on or about September 21, 2006.

5.       Defendant CHARRO PANKRATZ was a resident of Michigan.  At the

direction of defendant KENNETH MITAN, she incorporated CP Produce and Foods, Inc. in

Delaware on or about November 2, 2007.  CP Produce and Foods' sole director was identified as

"John Hill," an alias used by defendant KENNETH MITAN.

6.       The Williams Fund was incorporated in Delaware on or about June 9,

2005.  The listed shareholders were "David Feltt," "Frank Mytan," an alias used by defendant

FRANK MITAN, and "John Adams," an alias used by defendant KENNETH MITAN.  Its listed

address was in Bloomington, Indiana.

**THE CONSPIRACY**

7.       From at least in or about June 2005 through and including in or about

February 2008, in the Eastern District of Pennsylvania, and elsewhere, defendants

**KENNETH MITAN,**
**a/k/a "John Adams,"**
**a/k/a "John Miller,"**
**a/k/a "John Thompson,"**
**a/k/a "John Hill,"**
**FRANK MITAN,**
**a/k/a "Frank Mytan,"**
**a/k/a "Frank Miller,"**
**BRUCE ATHERTON, and**
**CHARRO PANKRATZ,**

conspired and agreed, together and with others known and unknown to the grand jury, to

knowingly devise a scheme to defraud, and for obtaining money and property by means of false

and fraudulent pretenses, representations, and promises, and to use the United States mails,

commercial interstate carriers, and interstate wires to further the scheme to defraud, in violation

of Title 18, United States Code, Sections 1341 and 1343.

## MANNER AND MEANS

It was a part of the conspiracy that:

8.      The conspirators preyed upon small businesses whose owners were

offering to sell the businesses (the "target businesses").  Using a false name, such as "John

Adams" or "John Thompson," defendant KENNETH MITAN negotiated to purchase these

businesses.  Under the terms of each deal, one of defendant KENNETH MITAN's corporate

entities, such as Williams Fund or CP Produce and Foods, Inc., acquired a controlling interest in

the business through a purchase agreement and handled day-to-day financial responsibilities,

while the sellers remained on the staff of the businesses after the closing pursuant to a consulting

agreement.

9.      At closing, defendant KENNETH MITAN, using a fake name, failed to provide the full amount of money he owed under the agreement of sale.  In some instances, based on promises to transmit the money shortly, defendant KENNETH MITAN obtained several blank checks from the target business's bank account based on his representations that these checks would be used to pay vendors and other creditors of the business.

10.     Once defendant KENNETH MITAN obtained control over the target business's bank accounts, defendants FRANK MITAN and BRUCE ATHERTON opened new bank accounts in the name of the target business (the "shell accounts").  The defendants thereafter diverted funds from the target business's bank account to one of the shell accounts based on the instructions of defendants KENNETH MITAN and BRUCE ATHERTON.

11.     In addition, following sale of the business, the defendants placed representatives on-site at some target businesses to facilitate the fraudulent scheme.  These representatives, among other things, ensured that payments received by the target businesses were mailed to various rented  postal boxes and then deposited in the shell accounts.

12.     Funds in the shell accounts were used for purposes other than the maintenance of the target businesses and diverted to defendants KENNETH MITAN, FRANK MITAN, BRUCE ATHERTON, CHARRO PANKRATZ, or their corporate entities.

13.     *The Fraudulent Purchase of Benny's Cheese Company*

a.      Using the fake name "John Adams" and purportedly representing the Williams Fund, defendant KENNETH MITAN  acquired control on or about September 9, 2005, of Benny's Cheese Company ("Benny's Cheese"), a food services business in Philadelphia.

b.        At closing, the seller (referred to as "Victim-1") provided defendant KENNETH MITAN with several signed blank checks from Benny's Cheese's bank account based on defendant KENNETH MITAN's false and fraudulent representations that the checks would be used to pay creditors of Benny's Cheese.

c.        Several of the blank checks were used to withdraw a total of approximately $80,575 from Benny's Cheese's bank account and deposit these funds in a shell account opened by defendant FRANK MITAN (the "Benny's Cheese shell account").  Defendant KENNETH MITAN instructed Victim-1 and other employees of Benny's Cheese to forward to the Williams Fund, via overnight delivery, all payments received by Benny's Cheese.  Victim-1 and the other employees complied with defendant KENNETH MITAN's instructions, and these payments were deposited in the Benny's Cheese shell account.

d.        The funds in the Benny's Cheese shell account were used for at least $21,000 of cash withdrawals, as well as transfers to defendant FRANK MITAN and Water Harbor, Ltd, a corporation owned and controlled by defendant KENNETH MITAN's mother.

e.        Many creditors of Benny's Cheese went unpaid in the weeks and months following the sale of the business.  Fearing that the company was headed toward bankruptcy, Victim-1 was forced to expend significant funds to pay creditors and to regain control of Benny's Cheese through arbitration in or about September 2006.

14.        *The Fraudulent Purchase of Engel Corporation*

a.        Approximately four days after acquiring control of Benny's Cheese, on or about September 13, 2005, defendant KENNETH MITAN again used the fake

name "John Adams" and the Williams Fund to acquire control of a the Engel Corporation, a

printing and copying business in Reston, Virginia.

        b.     At closing, the seller (referred to as "Victim-2") provided

defendant KENNETH MITAN with several signed blank checks from Engel Corporation's bank

account based on defendant KENNETH MITAN's false and fraudulent representations that the

checks would be used to pay creditors of Engel Corporation.  In addition, defendant KENNETH

MITAN failed to produce at closing the approximately $155,000 owed to Victim-2 pursuant to

the parties' contract and claimed that the money would be wired into Victim-2's personal bank

account by the Williams Fund the next business day.

        c.     Victim-2 never received the approximately $155,000 payment

promised by defendant KENNETH MITAN at closing.  In addition, several of the blank checks

provided by Victim-2 to defendant KENNETH MITAN were used to withdraw a total of

approximately $19,500 from Engel Corporation's bank account and deposit these funds in a shell

account opened by defendant FRANK MITAN (the "Engel Corporation shell account").

Moreover, in the weeks following the closing, approximately $82,259 in checks were issued on

the Engel Corporation's bank account which failed to clear because the account contained

insufficient funds.

        d.     Furthermore, defendant KENNETH MITAN instructed Victim-2

and other employees of Engel Corporation to forward to the Williams Fund, via overnight

delivery, all payments received by Engel Corporation.  Victim-2 and the other employees

complied with defendant KENNETH MITAN's instructions, and more than $100,000 in

payments were deposited in the Engel Corporation shell account between on or about November 1, 2005 and December 6, 2005.

        e.      The funds in the Engel Corporation shell account were used for at least $42,000 of cash withdrawals, as well as transfers to Water Harbor, Ltd., and Perma-Clad, Inc., a corporate entity whose bank account designated defendant FRANK MITAN as the sole signatory.  In addition, defendant KENNETH MITAN used funds diverted to the Engel Corporation shell account to pay for a vacation in Vietnam.

        f.      Many creditors of Engel Corporation went unpaid in the weeks and months following the sale of the business.  Fearing that the company was headed toward bankruptcy, Victim-2 was forced to expend significant funds to pay creditors and to regain control of Engel Corporation through arbitration in or about September 2006.

        15.    *The Fraudulent Purchase of Houseware Distributors, Inc.*

        a.      On or about September 15, 2006, defendant KENNETH MITAN again used the fake name "John Adams" and the Williams Fund to acquire control of Houseware Distributors, Incorporated ("HDI"), a home furnishing business in West Bend, Wisconsin.

        b.      Defendant KENNETH MITAN failed to produce at closing the approximately $50,000 owed to the seller (referred to as "Victim-3") pursuant to the parties' contract and claimed that the money would soon be wired into Victim-3's personal bank account by the Williams Fund upon receipt of a real estate loan by the Williams Fund.

        c.      Victim-3 never received the payment promised by defendant KENNETH MITAN at closing.  Furthermore, defendants KENNETH MITAN and BRUCE ATHERTON instructed Victim-3 and other employees of HDI to transmit funds from HDI's

bank account and future payments to a shell account opened by defendant FRANK MITAN (the

"HDI shell account").  Defendant KENNETH MITAN even arranged for one of his

representatives to be added as a signatory to the original HDI bank account and, at defendant

KENNETH MITAN's direction, that bank account was overdrawn by approximately $14,000.

       d.     The funds in the HDI shell account were disseminated to entities

including Water Harbor, Ltd., and Commonwealth Management and Consulting Services.

       e.     Many creditors of HDI went unpaid in the weeks and months

following the sale of the business.  Fearing that the company was headed toward bankruptcy,

Victim-3 was forced to expend significant funds to pay creditors and to regain control of HDI in

or about December 2006.

       16.     *The Fraudulent Purchase of Pruscino Brothers Produce*

       a.     On or about October 19, 2007, defendant KENNETH MITAN used

the fake name "John Thompson" to acquire control of Pruscino Brothers Produce ("PBP"), a

food services business in East Brunswick, New Jersey.  Defendant KENNETH MITAN claimed

that he was brokering the deal on behalf of defendant CHARRO PANKRATZ, whom he falsely

described as a wealthy investor from Michigan.

       b.     At closing, defendant PANKRATZ signed the stock purchase

agreement on behalf of CP Produce and Foods, Inc.  At that time, the seller (referred to as

"Victim-4") turned over the PBP business credit card to defendants KENNETH MITAN and

PANKRATZ, among other company assets.  In addition, defendants KENNETH MITAN and

PANKRATZ failed to produce at closing the approximately $34,000 owed to Victim-4 pursuant

to the parties' contract and claimed that the money would be wired into Victim-4's personal bank account on the next business day.

   c.  Following closing, defendants KENNETH MITAN and PANKRATZ  ordered PBP's office manager to turn over all cash and receivables on hand at PBP, which totaled approximately $10,000.  Soon thereafter, these funds were used to open a shell account by defendants KENNETH MITAN and PANKRATZ.  Defendant BRUCE ATHERTON opened a second PBP shell account at a bank in Louisville, Kentucky.

   d.  Victim-4 never received the payment promised by defendant KENNETH MITAN at closing.  Furthermore, defendants KENNETH MITAN and ATHERTON instructed Victim-4 and other employees of PBP to deposit funds in PBP's bank account and future payments in the shell accounts opened by defendants ATHERTON, KENNETH MITAN and PANKRATZ (the "PBP shell accounts").

   e.  The funds in the PBP shell account were disseminated to defendants FRANK MITAN, ATHERTON, and PANKRATZ, and corporate entities such as Water Harbor, Ltd.

   f.  Many creditors of PBP went unpaid in the weeks and months following the sale of the business, including its main supplier in Philadelphia.  Despite Victim-4's best efforts, PBP could not overcome the losses caused by the conspirators and was placed in receivership in February 2008.

## OVERT ACTS

In furtherance of this conspiracy, in the Eastern District of Pennsylvania and elsewhere, the defendants and others known and unknown to the grand jury committed the following overt acts:

1.      On or about June 9, 2005, an unindicted coconspirator incorporated the Williams Fund using a service in Delaware.

2.      On or about September 21, 2005, defendant FRANK MITAN opened a business checking account in the name of "Benny Cheese Co Ltd" at a bank in West Bloomfield, Michigan.

3.      On or about October 22, 2005, defendant FRANK MITAN wrote a check in the amount of $1,000 out of the Engel Corporation business checking account to Water Harbor, Ltd.

4       On or about October 26, 2005, defendant KENNETH MITAN caused to be sent via commercial interstate carrier receivables in the amount of approximately $10,921.62 of Benny's Cheese to the Williams Fund at an address in West Bloomfield, Michigan.

5.      On or about October 28, 2005, defendant KENNETH MITAN caused to be sent via commercial interstate carrier receivables in the amount of approximately $6,454.36 of Benny's Cheese to the Williams Fund at an address in West Bloomfield, Michigan.

6.      On or about October 29, 2005, Defendant KENNETH MITAN used a debit card associated with the Engel Corporation shell account to pay for lodging at a hotel in Vietnam, in the amount of approximately $332.64.

-10-

7.      On or about October  31, 2005, defendant KENNETH MITAN caused an email message to be sent to a representative of the Engel Corporation in Reston, Virginia, directing that receivables payable to the Engel Corporation be sent by overnight carrier to an out of state bank.

8.      On or about November 7, 2005, defendant KENNETH MITAN caused approximately $10,702.25 in receivables payable to Engel Corporation to be mailed for deposit to a bank in West Bloomfield, Michigan.

9.      On or about November 11, 2005, defendant KENNETH MITAN caused an email message to be sent to a representative of Benny's Cheese in Philadelphia, directing that receivables payable to Benny's Cheese be sent by overnight carrier to an out of state bank.

10.     On or about November 14, 2005, defendant KENNETH MITAN caused $23,044.70 in receivables payable to Engel Corporation, to be mailed from Reston, Virginia, to West Bloomfield, Michigan, for deposit into the Engel Corporation shell account.

11.     On or about November 18, 2005, defendant KENNETH MITAN caused an email message to be sent to a representative of Benny's Cheese in Philadelphia, directing that accounts payable information for Benny's Cheese be sent to him.

12.     On or about November 23, 2005, defendant KENNETH MITAN caused an email message to be sent to a representative of Benny's Cheese in Philadelphia, denying that he was engaged in fraudulent activity and directing the representative to continue working at Benny's Cheese.

13.     On or about November 27, 2005, defendant KENNETH MITAN caused an email message to be sent to a representative of Benny's Cheese in Philadelphia, directing that weekly receipt and expenditure information for Benny's Cheese be sent to him.

14.     On or about November 30, 2005, defendant KENNETH MITAN caused an email message to be sent to a representative of Benny's Cheese in Philadelphia, directing that information regarding disbursements from Benny's Cheese be sent to him.

15.     On or about December 20, 2005, defendant KENNETH MITAN caused an email message to be sent to a representative of HDI in West Bend, Wisconsin, advising that the Williams Fund was preparing to purchase HDI.

16.     On or about April 18, 2006, defendant KENNETH MITAN caused an email message to be sent to a representative of HDI in West Bend, Wisconsin, advising that the Williams Fund was preparing to purchase HDI.

17.     On or about October 24, 2006, defendant FRANK MITAN entered into an agreement on behalf of the Williams Fund with a third party under which that third party would receive all receivables payments remitted to HDI in exchange for a $300,000 line of credit.

18.     On or about October 24, 2006, defendant KENNETH MITAN caused an email message to be sent to a representative of HDI in West Bend, Wisconsin, directing the deposit of receivable funds into the HDI shell account.

19.     On or about December 11, 2006, defendant KENNETH MITAN caused approximately $9,786.56 in receivables payable to HDI, to be mailed from West Bend, Wisconsin, to a postal mailbox located in West Bloomfield, Michigan.

20.     On or about October 19, 2007, defendant CHARRO PANKRATZ represented herself to be the president of CP Produce and Foods, Inc. and signed a stock purchase agreement on its behalf to acquire Pruscino Brothers Produce at a meeting in East Brunswick, New Jersey.

21.     On or about October 22, 2007, defendant BRUCE ATHERTON opened a business checking account in the name of "Pruscino Bros Produce Inc." at a bank in Louisville, Kentucky.

22.     On or about October 26, 2007, defendant BRUCE ATHERTON caused to be sent a wire transfer of approximately $4,000 from a PBP bank account located in Louisville, Kentucky, to a bank account registered to Water Harbor Ltd. in Columbus, Ohio.

23.     On or about October 26, 2007, defendant BRUCE ATHERTON caused to be sent a wire transfer of approximately $1,000 from a PBP bank account in Louisville, Kentucky, to a bank account controlled by defendant FRANK MITAN in Columbus, Ohio.

24.     On or about November 2, 2007, defendant CHARRO PANKRATZ incorporated CP Produce and Foods, Inc., using PBP's business credit card.

25.     On or about November 29, 2007, defendant BRUCE ATHERTON caused an email message to be sent to an associate in New Jersey confirming his intent to wire approximately $40,850.56 to cover expenses at PBP.

26.     On or about December 26, 2007, defendant BRUCE ATHERTON wrote a check for cash in the amount of $2,000, which check was drawn on a PBP bank account opened in Louisville, Kentucky.

27.     On or about January 15, 2008, defendant BRUCE ATHERTON caused to be sent a wire transfer of approximately $3,500, from a PBP bank account in Louisville, Kentucky, to a bank account registered to defendant CHARRO PANKRATZ in New York, New York.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO AND THREE

(Mail Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs One through Six and Eight through Sixteen of Count One of this indictment are realleged here.

2.     From on or about June 2005, through and including in or about February 2008, defendants

**KENNETH MITAN,**
**a/k/a "John Adams,"**
**a/k/a "John Miller,"**
**a/k/a "John Thompson,"**
**a/k/a "John Hill," and**
**FRANK MITAN,**
**a/k/a "Frank Mytan,"**
**a/k/a "Frank Miller"**

devised and intended to devise a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

3.     On or about the dates listed below, in the Eastern District of Pennsylvania, and elsewhere, defendants

**KENNETH MITAN,**
**a/k/a "John Adams,"**
**a/k/a "John Miller,"**
**a/k/a "John Thompson,"**
**a/k/a "John Hill," and**
**FRANK MITAN,**
**a/k/a "Frank Mytan,"**
**a/k/a "Frank Miller,"**

for the purpose of executing the scheme described in Count One, and aiding and abetting its execution, deposited and knowingly caused to be deposited the items enumerated below to be

sent and delivered by a private and commercial interstate carrier according to the direction

thereon, each mailing constituting a separate count:

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| 2 | October 26, 2005 | Package containing receivables payable to Benny's Cheese in the amount of approximately $10,921.62 and addressed to the Williams Fund at an address in Las Vegas, Nevada |
| 3 | October 28, 2005 | Package containing receivables payable to Benny's Cheese in the amount of approximately $6,454,36 and addressed to the Williams Fund at an address in Las Vegas, Nevada |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS FOUR AND FIVE

(Wire Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    Paragraphs One through Six and Eight through Sixteen of Count One of this indictment are realleged here.

2.    From on or about June 2005, through and including in or about February 2008, defendants

**KENNETH MITAN,**
**a/k/a "John Adams,"**
**a/k/a "John Miller,"**
**a/k/a "John Thompson,"**
**a/k/a "John Hill," and**
**FRANK MITAN,**
**a/k/a "Frank Mytan,"**
**a/k/a "Frank Miller,"**

devised and intended to devise a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

3.    On or about the dates listed below, in the Eastern District of Pennsylvania, and elsewhere, defendants

**KENNETH MITAN,**
**a/k/a "John Adams,"**
**a/k/a "John Miller,"**
**a/k/a "John Thompson,"**
**a/k/a "John Hill," and**
**FRANK MITAN,**
**a/k/a "Frank Mytan,"**
**a/k/a "Frank Miller,"**

for the purpose of executing the scheme described in Count One, and aiding and abetting its execution, caused to be transmitted by means of wire communication in interstate commerce the

-17-

signals and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE | DESCRIPTION |
|:---:|:---:|---|
| 4 | November 11, 2005 | An email message sent via computer servers in California to a representative of Benny's Cheese in Philadelphia, Pennsylvania, directing that receivables payable to Benny's Cheese be sent by overnight carrier to a bank in Columbus, Ohio |
| 5 | November 27, 2005 | An email message sent via computer servers in California to a representative of Benny's Cheese in Philadelphia, Pennsylvania, directing that receipts and expenditure information from Benny's Cheese be sent to defendant KENNETH MITAN. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SIX

(Use Of False Name In Fraud Scheme)

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     Paragraphs One through Six and Eight through Sixteen of Count One of this indictment are realleged here.

      2.     On or about September 9, 2005, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**KENNETH MITAN,**
**a/k/a "John Adams,"**
**a/k/a "John Miller,"**
**a/k/a "John Thompson,"**
**a/k/a "John Hill,"**

for the purpose of conducting, promoting, and carrying on the scheme described in Counts One, Two, and Three of this indictment and other unlawful business, used and assumed, and requested to be addressed by, the fictitious, false, and assumed name of "John Adams."

      In violation of Title 18, United States Code, Section 1342.

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT**:

       1.    As a result of the violations of Title 18, United States Code, Sections 1341, 1342, 1343, and 1349 set forth in this indictment, defendants

**KENNETH MITAN,**
**a/k/a "John Adams,"**
**a/k/a "John Miller,"**
**a/k/a "John Thompson,"**
**a/k/a "John Hill,"**
**FRANK MITAN,**
**a/k/a "Frank Mytan,"**
**a/k/a "Frank Miller,"**
**BRUCE ATHERTON, and**
**CHARRO PANKRATZ,**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such offenses.

       2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

       (a)    cannot be located upon the exercise of due diligence;

       (b)    has been transferred or sold to, or deposited with, a third party;

       (c)    has been placed beyond the jurisdiction of the Court;

       (d)    has been substantially diminished in value; or

       (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), both incorporating Title 21, United States Code,

Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461, and Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2).

**A TRUE BILL:**

_____

**GRAND JURY FOREPERSON**

_____
**LAURIE MAGID**
**Acting United States Attorney**

-21-