**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION | |
| | : | | |
| v. | : | | |
| | : | | |
| KENNETH MITAN, | : | NOs. | 08-760-1 |
| FRANK MITAN, | : | | 08-760-2 |
| BRUCE ATHERTON. | : | | 08-760-3 |

**<u>MEMORANDUM</u>**

Pending before this Court are the following motions filed by Defendant Kenneth Mitan:

Motion to Quash the Indictment, Rule 12 Motion to Dismiss the Indictment, Amended Motion to

Dismiss the Indictment, Motion to Quash the Superseding Indictment, and Motion to Dismiss the

Superseding Indictment (Doc. Nos. 97, 109, 141, 197, 198).  Defendant Bruce Atherton also filed

a Motion to Dismiss the Indictment (Doc. No. 155).  In addition, Defendant Frank Mitan joined

Defendants' Motions to Dismiss.  For the foregoing reasons, the Motions will be DENIED.

**I.    <u>Factual and Procedural Background</u>**

   **A.    Background**

Defendants Kenneth Mitan, Frank Mitan, Bruce Atherton, and Charro Pankratz were

indicted on December 18, 2008 (Doc. No. 1).  Defendants Kenneth Mitan and Frank Mitan were

indicted on five counts: conspiracy to commit wire and mail fraud (Count I), two counts of mail

fraud (Counts II - III), and two counts of wire fraud (Counts IV - V).  Defendant Kenneth Mitan

was also indicted on a sixth count: use of a false name in a fraud scheme (Count VI).  Defendants

Atherton and Pankratz were indicted on the conspiracy count (Count I).  Defendants are accused

of defrauding small businesses.  Their scheme involved approaching a small business under false

pretenses, negotiating to buy the business, not paying the full amount of money due under the

contract at closing, taking control of the business, diverting its cash and accounts receivable for

personal use, and undermining the fiscal health of the acquired business.  (Grand Jury Tr. 5, Dec.

18, 2008; Superseding Indictment 3-4).  The Indictment describes four companies allegedly

defrauded by two or more Defendants: Benny's Cheese Company (naming Kenneth and Frank

Mitan), Engel Corporation (naming Kenneth and Frank Mitan), Houseware Distributors, Inc.

("HDI") (naming Kenneth and Frank Mitan and Bruce Atherton), and Pruscino Brothers Produce

(naming all four Defendants).  (Superseding Indictment 4-9).

> The Indictment specifically describes the fraudulent scheme as follows:
>
> Between at least in or about June 2005 through and including in or about February
> 2008, defendants KENNETH MITAN, a/k/a "John Adams," a/k/a "John Miller,"
> a/k/a "John Thompson," a/k/a "John Hill," FRANK MITAN, a/k/a "Frank
> Mytan," a/k/a "Frank Miller," BRUCE ATHERTON, and CHARRO
> PANKRATZ victimized small-business owners in the Eastern District of
> Pennsylvania and elsewhere.  Using several corporate entities, the defendants
> identified small businesses for sale, used false and fraudulent pretenses to obtain
> control of those businesses, and continued the fraud long enough to drain the
> businesses' assets for both the defendants' personal enrichment and continuing
> promotion of the fraudulent scheme.

(Id. 1-2 ¶ 1).   The conspiracy is described as the four Defendants and others conspiring "to

knowingly devise a scheme to defraud, and for obtaining money and property by means of false

and fraudulent pretenses, representations, and promises, and to use the United States mails,

commercial interstate carriers, and interstate wires to further the scheme to defraud."  (Id. 2-3 ¶

7).  The Indictment further describes the manner and means as to each business allegedly

defrauded and twenty-seven overt acts in furtherance of the conspiracy.  (Id. 3-14).

Defendants Frank Mitan, Atherton, and Pankratz were released on bail after hearings by

Magistrate Judge Caracappa on December 24, 2008 (Doc. Nos. 12, 15, 18).  Kennth Mitan was detained pre-trial per Order by Magistrate Judge Strawbridge issued January 7, 2009 (Doc. No. 24).  On January 8, 2009, Kenneth Mitan's attorney filed a Motion to Withdraw (Doc. No. 25), and Mitan filed a Motion to be Appointed Pro Se on January 13, 2009 (Doc. No. 29).  At a hearing held January 30, 2009, this Court approved Kenneth Mitan to proceed pro se (Doc. No. 58).  Mitan has continued to proceed pro se since that time; however this Court appointed stand-by counsel for Mitan on March 6, 2009 (Doc. No. 89).

Since that time, Mitan has filed numerous pre-trial motions, including a Motion and Request for Release (Doc. Nos. 51, 66), which this Court denied on March 6, 2009 (Doc. No. 91).  Mitan subsequently appealed that decision to the Third Circuit (Doc. No. 120), following this court's denial of his Motion for Reconsideration (Doc. No. 115).  The Third Circuit denied Mitan's Motion for Release on June 2, 2009 (Doc. No. 202).

### B.        Motions at Issue

On March 16, 2009, Mitan filed a Motion to Quash Indictment (Doc. No. 97), which alleges that United States Postal Inspector George Clark committed perjury in his grand jury testimony.  The Government responded on March 30, 2009 (Doc. No. 108).  Additionally on March 31, 2009, Mitan filed a Rule 12 Motion to Dismiss the Indictment (Doc. No. 109).

The Government issued a Superseding Indictment on April 23, 2009 (Doc. No. 133), which added one additional count (Count VII) against Kenneth Mitan for a false statement before the court related to an affidavit that Mitan filed as Exhibit C to his Motion for Release on Conditions (Doc. No. 118).

Mitan filed an Amended Rule 12 Motion to Dismiss on April 29, 2009 (Doc. No. 141).

Defendant Bruce Atherton filed a Motion to Dismiss the Indictment the same day (Doc. No. 155).  Defendant Frank Mitan joined Defendants' Motions to Dismiss by oral request at a hearing held May 7, 2009.  The Government responded to Defendants' Motions to Dismiss on May 15, 2009 (Doc. No. 192).  On May 28, 2009, Defendant Kenneth Mitan filed a Reply to the Government's Response and joined Bruce Atherton's Motion to Dismiss (Doc. No. 196).  On that same date, Kenneth Mitan filed a Motion to Quash the Superseding Indictment, specifically related to Count VII (Doc. No. 197).  Kenneth Mitan also filed a Motion to Dismiss the Superseding Indictment for a violation of Rule 6(e)(1) (Doc. No. 198).  The Government responded to Mitan's Reply and Mitan's new Motion to Quash and Motion to Dismiss on June 4, 2009 (Doc. No. 203).

Because the Superseding Indictment charges only one additional count against Kenneth Mitan and does not change the language of the original six counts, Kenneth Mitan's Motions filed prior to the issuance of the Superseding Indictment remain relevant.  In addition, because the language in the two Indictments is identical for Counts One through Six, this Court will refer to the Indictment and the Superseding Indictment interchangeably when discussing these counts.

## II.   Parties' Contentions

### A.   Kenneth Mitan's Motion to Quash the Indictment

In his March 16, 2009 Motion to Quash and corresponding Reply brief, Defendant Mitan alleges that the Indictment should be quashed because of perjured grand jury testimony on December 18, 2008 by Inspector Clark.  Mitan's allegations of perjury fall into three general categories.  First, Mitan claims that Clark's testimony that each of the sellers of the four companies named in the Indictment were not paid the full amount of money due on the closing

date is false.  Second, Mitan claims that Clark's testimony that Mitan and his co-Defendants transferred company funds and accounts receivable to shell accounts is false and deliberately misleading.  Third, Mitan argues that Clark's testimony that Mitan and his co-Defendants withdrew money from the newly-acquired companies for their own and their family's personal use is false and deliberately misleading.  In addition, Mitan alleges perjury related to Clark's specific testimony about each of the four companies.  Mitan asserts that Clark's perjury was pervasive and systemic, in direct contradiction to the documents and interviews gathered by the Government, and further that the Government relied on hearsay evidence in order to conduct the alleged perjury.  Mitan argues that the perjury substantially influenced the jury such that he was prejudiced by this misconduct.

The Government argues that Mitan has not met the high standard necessary to quash an indictment.  First, the Government argues that even if all of the allegedly perjurous testimony challenged by Mitan is struck, the remaining grand jury testimony is sufficient to support probable cause of the crimes charged.  The remaining testimony includes discussion of Mitan's negotiations with the target companies using a false name and under false pretenses, the use of private interstate mail facilities and interstate wire communications to facilitate control over the target companies, and evidence showing the active participation of each co-Defendant in the alleged conspiracy.  Second, the Government argues that Clark's testimony was not false and was supported by documents and interviews gathered in the Government's investigation.  Further, the Government argues that Mitan's allegations of perjury and responses thereto relate to his ultimate legal theories in defending his case at trial and are not appropriate in a motion to quash.  The Government did not respond to each specific allegation of perjury made by Mitan but offered to

do so at the Court's request.

**B.    Kenneth Mitan's Motion to Quash the Superseding Indictment**

In his May 28, 2009 Motion to Quash the Superseding Indictment, Mitan again alleges

perjury by Inspector Clark in the grand jury testimony on April 23, 2009, which concerned the

allegations in Count VII of the Superseding Indictment.  Mitan specifically argues that Clark

gave perjurous testimony when he stated that the lawyer of an individual identified in the

Superseding Indictment as M.T. had called various FBI agents and claimed that M.T.'s signature

had been forged.

The Government responded that Clark's testimony was truthful and supported by

evidence.  Furthermore, the Government claims that substantial unchallenged grand jury

testimony exists, despite the allegedly perjured statement, to establish probable cause of the

crime charged in Count VII.

**C.    Kenneth Mitan's Initial and Amended Motions to Dismiss the Indictment**

In his first Motion to Dismiss filed March 31, 2009, Defendant Mitan argues under Rule

12(b)(3)(B) that the facts alleged in the Indictment are insufficient to support the charged crimes.

He argues that each of the target companies sold its business to Mitan and his co-Defendants for

good consideration, so any business activities conducted subsequent to the sale were authorized

by the target company's seller and were not illegal.  Further, he argues that the specific

allegations of interstate mailings and wires—involving post-acquisition transactions of the

acquired companies—do not relate to the alleged fraud charged—involving the acquisition of the

target companies—and therefore can not support wire and mail fraud charges.  Finally, Mitan

claims that the Government has no evidence to support many of its specific allegations that Mitan

fraudulently purchased multiple small business and diverted their assets.

In his Amended Motion to Dismiss filed April 29, 2009, Mitan makes further allegations challenging the sufficiency of the Government's evidence to support the mail and wire fraud and use of a fake name charges.  In addition, Mitan challenges Count Seven in the Superseding Indictment, which alleges perjury by Mitan in an affidavit he filed with this Court.  Mitan claims the perjury charge is selective prosecution but seeks addition time to file a supporting brief.  Finally, Mitan claims that the entire Indictment must be dismissed because it does not meet various pleading requirements to sustain the crimes charged.

The Government responds to both Motions by claiming that Mitan's arguments are largely improper in the context of a Motion to Dismiss, since they either challenge the sufficiency of the Government's evidence or litigate the ultimate issue of Mitan's guilt or innocence.  In addition, the Government argues that the Indictment specifically alleges that the instances of mail and wire fraud in Counts Two through Five were made for the purpose of executing the fraudulent scheme, regardless of when they occurred, and therefore articulate cognizable mail and wire fraud claims.

In his Reply brief, Mitan reiterates many of the previous arguments he made in his initial and amended Motions to Dismiss about the mail and wire fraud charges.  In addition, he challenges the conspiracy count on multiple grounds: failure to plead with specificity, failure to plead materiality, duplicitous pleading, and additional arguments that are repetitive of arguments he made as to Counts Two through Five.

**D.      Kenneth Mitan's Motion to Dismiss the Superseding Indictment**

In his Motion to Dismiss the Superseding Indictment, filed May 28, 2009, Mitan argues

that the grand jury testimony used to return the Superseding Indictment violates Federal Rule of

Criminal Procedure Rule 6(e)(1), which requires that all proceedings before the grand jury be

recorded.  Mitan argues that there is a three-minute gap in the grand jury testimony of April 23,

2009, in violation of the Rule.

The Government responded that this argument is wholly frivolous since all grand jury

proceedings were recorded other than grand jury deliberations or voting.  In addition, even if the

proceedings had not been recorded, the Government claims that this is not a sufficient basis for

dismissal based on the language of Rule 6(e)(1).  Finally, the Government states that there is no

support in the record that the Government misstated the grand jury's question to the witness.

### E.      Bruce Atherton's Motion to Dismiss the Indictment

Bruce Atherton asserts that the Indictment should be dismissed on two grounds.  First,

Atherton claims that the Indictment improperly alleges a single conspiracy when it should have

charged multiple conspiracies.  Atherton argues that because he was only alleged to be involved

in two of the four businesses fraudulently purchased and because he was only alleged to be

involved in the business's operations post-purchase and not in the purchase itself, he was not

engaged in the common goal of the conspiracy.  Instead, Atherton claims he participated in a

limited "spoke" activity and not in the "wheel" of the conspiracy.  In addition, Atherton argues

that the Indictment does not allege he had knowledge of the other spokes of the conspiracy,

including the fraudulent purchases of the two companies with which he was not involved.

Second, Atherton claims that the Indictment does not allege a criminal act because it does

not adequately allege the fraudulent conduct engaged in by Defendants.  Further, Atherton again

argues that the Indictment only alleges his involvement in the second part of the scheme, the

diversion of company assets, and not in the first part of the scheme, the fraudulent purchase of the companies.  It follows, Atherton claims, that he did not have sufficient knowledge of the fraud and overall scheme.

The Government responds to Atherton's first argument by articulating the three-factor test used by the Third Circuit to distinguish between single and multiple conspiracies.  The Government argues that the Indictment satisfies each of the three factors in order to charge a single conspiracy because it alleges a common purpose, nearly identical modus operandi as to each of the fraudulent purchases, and substantive involvement by each of the named co-conspirators.  In answer to Atherton's second argument, the Government claims that Count One clearly alleges his direct involvement in two of the four fraudulent purchases and six overt acts he committed to further the overall conspiracy such that the Indictment adequately alleges his criminal conduct.

## III.   <u>Legal Standard</u>

### A.   **Motion to Quash the Indictment**

The standard to quash an indictment is extremely high.  "[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants."  <u>Bank of Nova Scotia v. United States</u>, 487 U.S. 250, 254 (1988).  Further, the district court must assess such claims using the "harmless error" standard.  <u>Id.</u> at 255-56.  In <u>Bank of Nova Scotia</u>, the Supreme Court identified two scenarios where dismissal of an indictment is appropriate: (1) where "structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice" or (2) where "'the violation substantially influenced the grand jury's decision to

indict,' or . . . there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations," which can establish the necessary prejudice.  Id. at 256-57 (quoting United States v. Mechanik, 475 U.S. 66, 78 (1986)).

To exemplify the first category, the Court described cases where there had been racial or gender discrimination in grand jury selection, Bank of Nova Scotia, 487 U.S. at 257 (citing Vasquez v. Hillery, 474 U.S. 254, 260-264 (1986); Ballard v. United States, 329 U.S. 187 (1946)), but courts have rejected applying this standard outside of the discrimination context. See United States v. Soberon, 929 F.2d 935, 950 (3d Cir. 1991) (rejecting that allegedly perjured grand jury testimony falls into the "structural protections" category such that prejudice does not have to be shown).

The second category, which both parties agree is the applicable analysis here, requires a showing that the violation prejudiced the grand jury.  Violations that may warrant dismissal of an indictment are those violations of the "'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions,'" including standards for prosecutorial behavior set forth in the U.S. Code.  United States v. Williams, 504 U.S. 36, 46, n.6 (1992) (quoting Mechanik, 475 U.S. at 74 (O'Connor, J., concurring)).  False declarations before the grand jury are criminalized by 18 U.S.C. § 1623. Therefore, perjury and prosecutorial misconduct, if prejudicial, would be grounds for quashing an indictment.

### B.      Motion to Dismiss the Indictment

A motion to dismiss under Federal Rule of Criminal Procedure 12(b)(3)(B) tests the sufficiency of the indictment.  In analyzing a motion to dismiss, the Court must accept as true the

facts alleged in the indictment and determine if those facts constitute a violation of the law under which the defendant is charged.  United States v. Stewart, 955 F.Supp. 385, 386 (E.D. Pa. 1997). If the facts alleged do not constitute a violation of federal law, the charges should be dismissed. Id.  "An indictment is generally deemed sufficient if it: (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution."  United States v. Vitillo, 490 F.3d 314, 321 (3d Cir. 2007) (quoting United States v. Rankin, 870 F.2d 109, 112 (3d Cir. 1989)).  The indictment need contain no greater specificity than the statutory language "so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution."  Rankin, 870 F.2d at 112 (citations omitted).  "[A]n indictment is sufficient if it adequately informs the defendant of the charges against him." United States v. Turley, 891 F.2d 57, 59 (3d Cir. 1989).

In evaluating the sufficiency of the indictment, the Court is limited to the four corners of the indictment itself, not outside evidence.  Vitillo, 490 F.3d at 321.  The sole function of a motion to dismiss is to test the sufficiency of the allegations in the indictment; it is not a device to test the sufficiency of the government's evidence.  United States v. DeLaurentis, 230 F.3d 659, 660 (3d Cir. 2000).

A motion to dismiss a conspiracy indictment is evaluated under the same standards noted above.  See Rankin, 870 F.2d at 113 (quoting United States v. Scanzello, 832 F.2d 18, 22 (3d Cir. 1987); United States v. Bailey, 444 U.S. 394, 414 (1980)).  A single conspiracy count may allege a conspiracy to commit several crimes or constitute a conspiracy with multiple objectives.

United States v. Reyes, 930 F.2d 310, 312 (3d Cir. 1991) (quoting Braverman v. United States,

317 U.S. 49, 54 (1942)).  The Third Circuit employs a three-step inquiry to determine whether a

series of events constitutes a single conspiracy or several unrelated conspiracies:

> First, we examine whether there was a common goal among the conspirators.  Second, we
> look at the nature of the scheme to determine whether the agreement contemplated
> bringing to pass a continuous result that will not continue without the continuous
> cooperation of the conspirators.  Third, we examine the extent to which the participants
> overlap in the various dealings.

United States v. Greenidge, 495 F.3d 85, 93 (3d Cir. 2007) (quoting United States v. Kelly, 892

F.2d 255, 259 (3d Cir. 1989)).

**IV.   Discussion**

**        A.      Kenneth Mitan's Motions to Quash**

        1.      Kenneth Mitan's Motion to Quash the Indictment

        Defendant Mitan alleges that the Indictment must be quashed based on numerous

instances of perjury by the Government's grand jury witness on December 18, 2008.  This Court

finds that Mitan has not proven the alleged perjury substantially influenced the Indictment such

that it would not have been obtained "notwithstanding the asserted error."  Bank of Nova Scotia,

487 U.S. at 255 (quoting United States v. Hastings, 461 U.S. 499, 506 (1979)).

                a.      Counts II-V (Mail and Wire Fraud)

        Counts Two through Five of the Indictment charge Kenneth and Frank Mitan with wire

and mail fraud and aiding and abetting wire and mail fraud.  The elements of mail or wire fraud

under 18 U.S.C. §§ 1341, 1343 are (1) the defendant's knowing and willful participation in a

scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of the mails

or interstate wire communications in furtherance of the scheme."[1]  United States v. Hedaithy, 392

F.3d 580, 590 (3d Cir. 2004) (quoting United States v. Antico, 275 F.3d 245, 261 (3d Cir.

2001)).  Mitan does not challenge Clark's testimony related to the third element, the use of the

mail or interstate wire communications.  Instead he challenges testimony that his activities

regarding the purchase and management of the target companies were in fact fraudulent.

Irrespective of the testimony challenged by Mitan, Inspector Clark gave additional unchallenged

testimony, described below, that tends to show both Mitan's knowing and willful participation in

a scheme to defraud and specific intent to defraud, satisfying elements one and two.

First, Mitan does not challenge testimony that he used a false name in approaching the

target companies, carrying out their acquisition, and subsequently managing the companies.  (Tr.

6, 13-15, 22, 30-31, 38, Dec. 18, 2008).  Second, Mitan does not challenge testimony that in

approaching target companies for purchase, he claimed to represent investors that do not appear

to exist—anonymous Asian investors in the case of Williams Fund Private Equity Group and a

wealthy Midwestern doctor in the case of C.P. Produce and Foods.  Mitan does not challenge

testimony that the Williams Fund incorporation papers list Kenneth Mitan, Frank Mitan, and

Kenneth Mitan's college roommate as its directors and that his roommate had never heard of the

Williams Fund nor been involved with it.  (Tr. 6-7, 22-23, 30, 38-39, Dec. 18, 2008).  Nor does

---

[1]The mail fraud and wire fraud statutes are "in pari materia and are, therefore, to be given
similar construction."  United States v. Fumo, 2008 WL 1731911, at *2 (E.D. Pa. Apr. 10, 2008)
(quoting United States v. Tarnopol, 561 F.2d 466, 475 (3d Cir. 1977), abrogated on other
grounds by Griffin v. United States, 502 U.S. 46 (1991)).
    Although not directly relevant in this Motion to Dismiss, the Third Circuit requires that in
a mail fraud case the Government prove that the defendant participated in the fraudulent scheme
knowingly and "in furtherance of the illicit enterprise."  United States v. Dobson, 419 F.3d 231,
237 (quoting United States v. Pearlstein, 576 F.2d 531 (3d Cir. 1978)) (reversing the district
court for failing to instruct the jury on this element).

Mitan challenge testimony that C.P. Produce was incorporated by co-Defendant Charro Pankratz after C.P. Produce had executed a stock purchase agreement to buy target company Pruscino Brothers and that C.P. Produce's incorporation fee was paid with Pruscino Brothers's business credit card.  (Tr. 40-41, Dec. 18, 2008).  Based on this unchallenged testimony about fraudulent activity, there is sufficient probable cause to show Mitan's knowing participation in the scheme and intent to defraud to return a valid indictment for wire and mail fraud.

b. <u>Count VI (False Name)</u>

Count Six of the Indictment charges Kenneth Mitan with using a fraudulent name in the course of mail fraud, in violation of 18 U.S.C. § 1342.  Section 1342 criminalizes using or assuming a false, fictitious, or assumed name, title, or address for the purpose of conducting mail fraud.  18 U.S.C. § 1342.  As stated above, Mitan does not challenge the testimony that he used a fake name in acquiring the target companies or that he made false representations in negotiating their purchase.  Further, there is sufficient testimony that Mitan engaged in fraudulent activity.  Therefore the grand jury testimony is sufficient, notwithstanding the alleged perjury, to return a valid indictment for use of a false name in the course of mail fraud.

c. <u>Count I (Conspiracy)</u>

Count One of the Indictment charges all four Defendants with conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 1349.  The elements of conspiracy to commit wire and mail fraud are (1) an agreement between two or more persons to commit mail fraud, (2) the defendant knowingly joined the conspiracy, and (3) one of the conspirators committed an overt act in furtherance of the conspiracy.  <u>United States v. Gebbie</u>, 294 F.3d 540 (3d Cir. 2002) (citing <u>United States v. Conley</u>, 37 F.3d 970, 976-77 (3d Cir. 1994)).  "[A]n indictment alleging

-14-

conspiracy to commit mail or wire fraud is sufficient absent allegations that the defendants

agreed to use the mails or wires for the purpose of executing the alleged frauds." United States

v. Fumo, 2008 WL 1731911, at *2 (E.D. Pa. Apr. 10, 2008) (citing Turley, 891 F.2d at 59-60).

Kenneth Mitan does not object to Clark's testimony about the active participation of each of the

co-Defendants in the alleged fraud conspiracy, which establishes the necessary probable cause of

an agreement.  (Tr. 9, 19, 23, 25, 26-27, 31-33, 35-36, 39-44, Dec. 18, 2008).  Further Defendant

does not challenge testimony about his role in the alleged conspiracy or the multiple overt acts

committed in the furtherance of the conspiracy.  Instead he argues that his conduct and that of the

conspiracy was not fraudulent.  Based on the unchallenged testimony alleging a conspiracy,

Clark's testimony presents sufficient probable cause to return a valid indictment for conspiracy.

        d.    Summary

       Based on the above discussion, the Court finds that any alleged perjury in Clark's

testimony was harmless error and the Indictment is valid notwithstanding the alleged perjury.  It

follows that the alleged perjury therefore did not prejudice Mitan, and the Court will not quash

the Indictment.  Bank of Nova Scotia, 487 U.S. at 254.  Because the Court finds the Indictment

valid despite any alleged perjury, it will not examine each of Mitan's alleged instances of perjury

and his corresponding arguments and purported evidence related to the events to which Clark

testified.  "'It would run counter to the whole history of the grand jury institution' to permit an

indictment to be challenged 'on the ground that there was inadequate or incompetent evidence

before the grand jury.'" Williams, 504 U.S. at 54 (quoting Costello v. United States, 350 U.S.

359, 363-364 (1956)).   A motion to quash that challenges "the reliability or competence of the

evidence presented to the grand jury" will not be heard.  Williams, 504 U.S. at 54 (quoting Bank

of Nova Scotia, 487 U.S. at 261).  Mitan's contentions as to the business transactions in which he

participated will be presented at trial, with the Government having the burden of proof, but they

are inappropriate in the context of a motion to quash where the validly-returned indictment

established probable cause sufficient to require Mitan to stand trial.

2.      Kenneth Mitan's Motion to Quash the Superseding Indictment

Defendant Mitan claims additional perjury by Inspector Clark in the April 23, 2009 grand

jury testimony, which was used to return the Superseding Indictment adding the additional count

for false declaration before the court (Count VII).  Specifically, Mitan asserts that Clark

committed perjury when he stated:

> Some of the earlier FBI agents, when I said in the beginning that other FBI agents
> have been investigating Mr. Mitan's activity around the country, some of their
> investigation notes revealed that [M.T.] had a lawyer calling these agents claiming
> that his signature has been forged on several documents including this one.

(Tr. 15:19-16:2, Apr. 23, 2009).  Mitan goes on to argue that Clark informed him on a separate

occasion that this testimony referenced 302 reports that had been provided to Mitan.  Mitan

claims that there are no 302 reports or investigative notes that support the testimony quoted

above.  He states that the closest 302 report to support this testimony is an interview with a bank

loan officer who told an FBI officer that  M.T.'s attorney alleged that M.T.'s signature had been

forged on a bank signature card.  Mitan claims that an allegation of forgery on a bank signature

card does not support the perjury charge against him at issue here.

This allegedly perjured statement would not substantially influence the Superseding

Indictment such that it would not have been obtained "notwithstanding the asserted error."  Bank

of Nova Scotia, 487 U.S. at 255 (quoting Hastings, 461 U.S. at 506).  The elements of a false

-16-

declaration offense are: (1) the defendant was under oath, (2) before a court or grand jury, (3) defendant made a false declaration, (4) the defendant did so knowingly, and (5) the false declaration was material. United States v. Reilly, 811 F.Supp. 177, 179 (D. Del. 1993) (citing 18 U.S.C. § 1623(a); United States v. Lardieri, 497 F.2d 317, 319-20 (3d Cir. 1974)).

The unchallenged grand jury testimony of Inspector Clark sufficiently establishes each of these elements.  First, Clark testified that Mitan's Affidavit stated, "Ken Mitan, duly sworn, states as follows under penalty of perjury." (Tr. 9:5-8, Apr. 23, 2009).  Second, Clark testified that the Affidavit was attached as Exhibit C to a motion filed in this Court by Mitan on April 9, 2009.  (Id. at 7-9).  Third, Clark testified that Mitan's Affidavit stated that "in his presence . . . [M.T.] executed the affidavit at issue here" (Id. at 9:9-12), but M.T. had told investigating postal officers that he had never seen the affidavit declaration before, did not recognize it, and would never have signed it (Id. at 11:13-19).  Clark further testified that M.T. told inspectors he had never signed the affidavit.  (Id. at 14:23-24).  This testimony establishes probable cause that Mitan made a false declaration concerning M.T.'s signature of the affidavit.  Fourth, based on Clark's testimony about the conflicting accounts of M.T.'s signature on the affidavit, there is sufficient probable cause that Mitan's false declaration was knowing, since Mitan declared under oath that he witnessed M.T. executing an affidavit that M.T. claimed he never signed.  (Id. at 9, 11, 14).  Fifth, Clark's testimony establishes that Mitan's allegedly false declaration was material, since it concerned one of Mitan's central arguments for his release from pre-trial detention.  (Id. at 4-6).  Therefore, the Indictment is valid notwithstanding the testimony that Mitan claims to be perjurous, and the Court will not quash the Superseding Indictment.  Bank of Nova Scotia, 487 U.S. at 254.  In addition, Mitan's argument amounts to an attack of the

Government's evidence, which is improper in a motion to quash.  <u>Williams</u>, 504 U.S. at 54.

Mitan further argues that there was prosecutorial misconduct.  He claims that the prosecutor substantially prejudiced the grand jury by stating that law enforcement agencies around the country have investigated Mitan and that Mitan is currently detained pending trial. Mitan asserts that these statements were needless, prejudicial, and violative of Mitan's Fifth Amendment rights.  In examining the transcript, the statement about investigations "around the country" of Mitan was actually a response by Inspector Clark to a general question from the prosecutor.  (Tr. 3:4-10, Apr. 23, 2009).  The statement that Mitan is currently detained occurred during the prosecutor's line of questioning about Mitan's Motion for Release, since the allegedly perjured affidavit that forms the basis of Count Seven was attached to that Motion.  (<u>Id.</u> at  4:12-14).  Therefore this statement established the background of the allegedly perjured affidavit. Furthermore, these statements do not rise to the level of prejudice required to quash an otherwise valid indictment.  <u>See</u> <u>Bank of Nova Scotia</u>, 487 U.S. at 255.  In summary, this Court rejects each of Mitan's arguments in his Motion to Quash the Superseding Indictment.

> **B.**     **Motions to Dismiss the Indictment**
>
>> 1.     <u>Kenneth Mitan's Initial Motion to Dismiss</u>

_____ Kenneth Mitan seeks to dismiss the Indictment on multiple grounds.  Mitan argues, just as in his Motion to Quash, that his business transactions were legal and therefore can not form the bases of the crimes charged.  Mitan further alleges that there is no evidence to establish many of the facts relied on by the Government in the Indictment.  (Def.'s Mitan's Mot. Dismiss 3-6 ¶¶ 13-33).  However, as stated <u>supra</u> Part III.B, such arguments about the sufficiency of the evidence are not allowed in a motion to dismiss, and Mitan's guilt or innocence will be tested at trial.  <u>See</u>

DeLaurentis, 230 F.3d at 660.  In determining a motion to dismiss the indictment, this Court will accept as true the facts alleged in the indictment and examine only whether the indictment's alleged facts are sufficient to support the crimes charged.  See United States v. Besmajian, 910 F.2d 1153, 1154 (3d Cir. 1990); United States v. Winer, 323 F.Supp. 604, 605 (D.C. Pa. 1971).  Under this standard, the Court will not consider each of Mitan's separate arguments that no evidence exists to support allegations in the Indictment.

        In addition to challenging the sufficiency of the Government's evidence, Mitan challenges the mail and wire fraud charges.  As stated supra Part IV.A.1.a, the elements of mail and wire fraud under 18 U.S.C. §§ 1341, 1343 are: (1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of the mails or interstate wire communications in furtherance of the scheme.  Hedaithy, 392 F.3d at 590 (quoting Antico, 275 F.3d at 261).  "Additionally, the object of the alleged scheme or artifice to defraud must be a traditionally recognized property right."  Hedaithy, 392 F.3d at 590 (citing United States v. Henry, 29 F.3d 112, 115 (3d Cir. 1994)).

          a.     Mail and Wire Fraud with Respect to an Intangible Property Right

        Mitan claims that obtaining the stock of a corporation is an intangible property right and therefore its obtainment can not sustain wire and mail fraud charges.  For this proposition, he cites to McNally v. United States, 483 U.S. 350 (1987) and United States v. Regan, 713 F.Supp. 629 (S.D.N.Y. 1989).  McNally reversed the defendant's conviction for mail fraud since it involved defrauding people of their intangible rights to honest and impartial government.  Id. at 360.  The Court held that the mail fraud statute is limited to the protection of property rights.  Id. However, McNally has been clarified in subsequent caselaw and by statute to establish that the

mail and wire fraud statutes apply to both tangible and intangible property rights.  See Carpenter

v. United States, 484 U.S. 19, 25 (1987) (holding that McNally did not limit the scope of § 1341

to tangible, as opposed to intangible, property rights and upholding a mail fraud conviction to

defraud the Wall Street Journal of confidential business information); United States v. Stoneman,

870 F.2d 102, 105 n.2 (3d Cir. 1989) (noting that Congress amended the definition of  "scheme

or artifice to defraud" in the mail fraud statute to include "a scheme or artifice to deprive another

of the intangible right of honest services" in the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-

960 § 7603(a) (codified as 18 U.S.C. § 1346)).  As such, stock is an intangible property right and

is protected by the wire and mail fraud statutes.  See Lucker Mfg. v. Home Ins. Co., 23 F.3d 808,

819 (3d Cir. 1994) (distinguishing stock as an intangible property right from intangible rights

such as goodwill or reputation).

Furthermore, Mitan's argument fails for a second reason.  The Indictment does not allege

wire and mail fraud solely in the context of obtaining corporate stock, although this is one of the

broader allegations concerning the scheme:

> Under the terms of each deal, one of defendant KENNETH MITAN's corporate
> entities . . . acquired a controlling interest in the business through a purchase
> agreement and handled day-to-day financial responsibilities . . . .  At closing,
> defendant KENNETH MITAN, using a fake name, failed to provide the full
> amount of money he owed under the agreement of sale.

(Superseding Indictment 3-4 ¶¶ 8-9).  In addition, the Indictment describes fraud to obtain money

and property as follows.  The Indictment states that Kenneth Mitan "obtained control over the

target business's bank accounts," that defendants Frank Mitan and Bruce Atherton "opened new

bank accounts in the name of the target business," and that the defendants "thereafter diverted

funds from the target business's bank account to one of the shell accounts."  (Id. at 4 ¶ 10).  In

addition, the Indictment's mail and wire fraud counts allege "a scheme to defraud and to obtain money and property."  (Id. at 15 ¶ 2, 17 ¶ 2).  The mail fraud counts specifically describe mailings containing receivables worth specific amounts of money (id. 16), and the wire fraud counts describe emails directing that receivables be sent to a specific bank account and that receipts and expenditure information be sent to Kenneth Mitan (id. 18).  Therefore, Mitan is charged with fraud to obtain money and property of the businesses he targeted.  Mitan's argument that the Indictment fails because the mail fraud relates to intangible rights is unfounded.

> b.     Proximity of Interstate Mail and Wire Communications to the Alleged Fraud

Next Mitan argues that the mailings described in the Indictment were tangential to the alleged fraud and reflected legitimate business transactions such that they do not support mail and wire fraud charges.  Mitan cites to United States v. Brickey, 296 F.Supp. 742 (E.D. Ark. 1969) for the proposition that a mail fraud charge can not be predicated upon innocent corporate mailings in the ordinary course of business.  The court in Brickey dismissed specific mail fraud counts where the mailings were not fraudulent themselves nor had any "proximate connection" to the defendant's diversions of corporate funds.  Brickey, 296 F.Supp. at 749.  Mitan further cites to United States v. Chason, 451 F.2d 301 (2d Cir. 1971) for the proposition that tangential mail use cannot sustain a federal mail fraud violation.

Although the cases cited by Mitan stand for the propositions he advances, the facts alleged in the Indictment when taken as true establish that the alleged mailings furthered the execution of the allegedly fraudulent scheme and meet the standard for mail fraud.  "Under the

statute, the mailing must be for the purpose of executing the scheme, as the statute requires, but it is not necessary that the scheme contemplate the use of the mails as an essential element." United States v. Maze, 414 U.S. 395, 400 (1974) (internal quotations and citations omitted).  "To support a mail fraud conviction, a mailing must further the scheme to defraud or be incident to an essential part of that scheme."  United States v. Ruuska, 883 F.2d 262, 264 (3d Cir. 1989); see also Gintowt v. TL Ventures, 226 F.Supp.2d 672, 677 (E.D. Pa. 2002) (quoting United States v. Frey, 42 F.3d 795, 798 (3d Cir. 1994)).  "Even a routine or innocent mailing may supply the mailing element as long as it contributes to the execution of the scheme."  Schmuck v. United States, 489 U.S. 705, 714-15 (1989).  Although a mailing sent after the object of the scheme has been accomplished is not sufficiently related to the scheme to support a mail fraud conviction, "'the object of the scheme is not necessarily accomplished at the moment when the perpetrator of the scheme receives the fruits of the scheme.'"  Ruuska, 883 F.2d at 264 (quoting United States v. Lebovitz, 669 F.2d 894, 896 (3d Cir. 1982), cert. denied, 456 U.S. 929 (1982)).  Therefore mailings subsequent to the completion of a scheme can be for the purpose of executing the scheme if, for instance, they were used to reassure the victims and delay discovery of the defendant's conduct.  Ruuska, 883 F.2d at 264 (quoting United States v. Lane, 474 U.S. 438, 451-52 (1986)).

The wire and mail fraud charges relate to Mitan's allegedly fraudulent purchase of Benny's Cheese Company, one of the four target companies described in the Indictment.  The Indictment charges that Mitan gained control of Benny's Cheese on September 9, 2005. (Superseding Indictment 4 ¶ 13(a)).  The mail and wire transactions occurred between October 26, 2005 and November 27, 2005.  (Id. at 16, 18).  Although these transactions occurred after

Mitan had gained control of the company, and Mitan argues that they were legitimate business transactions since Mitan now owned and controlled Benny's Cheese, the Indictment's description of the fraudulent scheme does not just encompass Mitan's gaining control of the target company under false pretenses but also subsequently diverting assets from that company.  (See id. 4-5 ¶ 13(a)-(e) (specifically describing "The Fraudulent Purchase of Benny's Cheese Company"); id. at 1-2 ¶ 1 (describing the scheme to "use[ ] false and fraudulent pretenses to obtain control of those businesses, and continue[ ] the fraud long enough to drain the businesses' assets"); id. at 3-4 ¶¶ 8-12 (describing the broader conspiracy to both "acquire[ ] a controlling interest in the business" and "divert[ ] funds from the target business's bank account to one of the shell accounts")). Therefore, the allegations in the Indictment support that the mailings and emails furthered the scheme to defraud by carrying out the diversion of Benny's Cheese Company's assets.[2] Furthermore, the mail and wire fraud counts in the Indictment specifically state that the mailings and email messages were sent "for the purpose of executing the scheme described in Count One [conspiracy], and aiding and abetting its execution."  (Id. 15 ¶ 3, 17 ¶ 3).

Mitan raises the additional related argument that Count V—the wire fraud charge for an email directing receipts and expenditure information to be sent to him—is not itself a

---

[2]The Government argues in its Response brief that the Defendants' scheme lasted from June 2005 to February 2008 because it encompasses the defrauding of all four businesses named in the Indictment; therefore the 2005 mailings and emails clearly occurred during the pendency of the charged scheme.  (Govt's Resp. Defs.' Mots. Dismiss 8).  However, even if the mail and wire fraud charges are only considered as part of the scheme to defraud Benny's Cheese Company specifically, the alleged mailings and emails occurred during the pendency of this particular scheme since they furthered the diversion of Benny's Cheese funds.  The Indictment does not allege a specific end date of the diversion of assets from Benny's Cheese.  However it does allege that, to avoid bankruptcy, the original owner repaid creditors and regained control of Benny's Cheese in or about September 2006.  (See Superseding Indictment 5 ¶ 13(e); Govt's Resp. 8 n.2).

communication directing a transfer of money.  Yet the Indictment alleges that this email is in

furtherance of the fraudulent scheme to divert funds from Benny's Cheese Company, and the

Court must accept this allegation as true.  Such information could be used to assist the diversion

of funds.  Overall, Mitan's arguments that the specific mail and wire fraud charges were not

sufficiently proximate to the alleged fraud to be chargeable offenses under the fraud statutes fail.

    2. <u>Kenneth Mitan's Amended Motion to Dismiss</u>

   In his Amended Motion to Dismiss, Mitan advances a range of additional arguments,

some of which are substantially related to his original Motion to Dismiss arguments.  In addition,

Mitan raises new arguments for dismissal in his Reply brief.  The Court will address Mitan's

arguments as to each count of the Indictment and then to the Indictment as a whole.[3]

    a. <u>Count I (Conspiracy)</u>

   As to Count One, Mitan first alleges that the Indictment does not plead with specificity

how the alleged victims were defrauded, a requirement of the <u>Rankin</u> standard.  As stated <u>supra</u>

Part III.B, <u>Rankin</u> requires that an indictment: (1) contain the elements of the offense intended to

be charged, (2) sufficiently apprise the defendant of what he must be prepared to meet, and (3)

allow the defendant to show with accuracy to what extent he may plead a former acquittal or

conviction in the event of a subsequent prosecution.  <u>Vitillo</u>, 490 F.3d at 321 (quoting <u>Rankin</u>

870 F.2d at 112).  Although Mitan quotes Paragraph Seven from the Indictment in support of this

argument, which does not state how the victims were defrauded, other portions of the Indictment

---

   [3]Although Mitan organized the arguments in his Reply brief under separate headings for
the various counts, his arguments do not always relate to the count to which he identifies the
argument.  However for the purpose of completeness in addressing his numerous arguments, this
Court will examine his arguments based on the sub-headings utilized by Mitan.

describe how the Defendants "victimized small-business owners" and "preyed upon small businesses" by identifying small businesses for sale, using false pretenses to obtain control of these businesses, and continuing the fraud to drain the businesses' assets.  (Superseding Indictment 1 ¶ 1, 3-4 ¶¶ 8-12).  These alleged facts are sufficient to alert Mitan to the charges he must meet and the conduct barred by double jeopardy in the event of subsequent prosecution under the <u>Rankin</u> standard.

Second, Mitan alleges that Count One must be dismissed because the Indictment does not plead a material falsehood, as required by <u>Neder v. United States</u>, 527 U.S. 1, 25 (1999).  <u>Neder</u> held that materiality of the falsehood is an element of mail and wire fraud, and defines "immaterial misrepresentations or means" as "incapable of influencing the intended victim."  <u>Id.</u> at 24.  Mitan claims that there is not sufficient materiality since the Indictment only alleges that he did not use his real name during negotiations and since the Government concedes that the target company's buyers were legally formed corporations.

Mitan's argument on materiality ignores multiple additional allegations in the Indictment, including that at closing he "failed to provide the full amount of money he owed under the agreement of sale," that in some instances based on promises to transmit the money shortly he "obtained several blank checks for the target business's bank account based on representations that these checks would be used to pay vendors and other creditors," that he and other Defendants opened shell accounts and diverted funds from the target business bank accounts to these new accounts, that they placed representatives on-site at some businesses to facilitate the fraudulent scheme, and that funds in the shell accounts were used for purposes other than the maintenance of the target businesses and were diverted to Defendants or their corporate entities.

(Superseding Indictment 4 ¶¶ 9-12).  These allegations clearly establish that the manner and means of the fraudulent scheme went directly to the bargain received and were capable of influencing the victims to sell their businesses to Mitan, such that Mitan's falsehoods were material.  See Stewart, 151 F.Supp.2d at 584 (holding that the indictment was not deficient because the indictment repeatedly charged that the defendant made false and fraudulent representations and because the word "fraudulent" clearly encompasses the notion of materiality).  Although the Indictment does not contain the word "material," "the failure of an indictment to allege materiality as an explicit element is not fatal to the indictment."  United States v. Wecht, 2007 WL 3125096, at *5 (W.D. Pa. 2007) (collecting cases).  Therefore the failure to charge materiality is not grounds to dismiss the Indictment.

Third, Mitan argues that the Indictment does not allege that the actual taking of money from the target companies post-acquisition was fraudulent, only that the purchase was fraudulent, citing to United States v. Tencer, 107 F.3d 1120 (5th Cir. 1997).  Tencer reversed the defendants' conviction on certain mail fraud counts because it did not find sufficient evidence that the underlying checks were connected to or furthered the alleged fraud.  Id. at 1126-27.  Initially, this Court rejects Mitan's argument because the Indictment specifically alleges fraud not just as to Mitan's purchase of the target companies but fraud that continued through the draining of the companies' assets.  (Superseding Indictment 2 ¶ 1, 4 ¶¶ 9-12).  Therefore the Indictment does not have to allege separate fraud by Mitan with respect to the taking of money.  In addition, since Mitan bases this argument on the holding stated above in Tencer, it is essentially the same argument Mitan made in his initial Motion to Dismiss that the interstate mailings and wire transactions described in the Indictment were not connected to the alleged fraud.  As explained

supra Part IV.B.1.b, under the standards described in <u>Maze</u>, 414 U.S. at 400, and <u>Ruuska</u>, 883 F.2d at 264, the Indictment is sufficient to establish that the charged mail and wire transactions were related to and furthered the alleged fraudulent scheme.

Fourth, Mitan argues that the alleged fraud did not utilize interstate mail, wire, or interstate carriers, citing <u>Maze</u>, 414 U.S. 395.  This argument is again identical to the argument made in his initial Motion to Dismiss that the interstate mailings and wire transactions described in the Indictment were tangential to the alleged fraud.  As this Court explained <u>supra</u> Part IV.B.1.b, the mail and wire charges are valid and therefore support the conspiracy charge based on mail and wire fraud.

Fifth, Mitan repeats his argument that stock is an intangible asset and therefore not subject to prosecution under the mail and wire fraud statutes, citing <u>McNally</u>, 483 U.S. 350.  As explained <u>supra</u> Part IV.B.1.a, caselaw and statutory amendments since <u>McNally</u> clearly establish that fraudulent obtainment of stock, as an intangible property right, is subject to prosecution under the mail and wire fraud statutes.  In addition, the Indictment alleges the obtainment of money and property, not just corporate stock, which is subject to prosecution under the mail and wire fraud statutes.

Sixth, Mitan argues that the conspiracy count is multiplicious, citing <u>United States v. Camiel</u>, 689 F.2d 31 (3d Cir. 1982).  In <u>Camiel</u>, the Third Circuit found that there was insufficient evidence to show a single, unitary scheme to support the jury verdict finding a mail fraud scheme based on established animosity between two of the alleged co-schemers, evidence that the allegedly unifying committee was not actually a galvanizing force, and lack of evidence of a linkage between the two bodies allegedly involved in the scheme.

-27-

Although Mitan claims that Count I is multiplicious, he is actually arguing that it is duplicitous.  Duplicity is the joining of two or more distinct and separate offenses in a single count, whereas multiplicity is the charging of a single offense in several counts.  1A Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure: Criminal § 142 (4th ed. 2008); see also United States v. Starks, 515 F.2d 112, 116-17 (3d Cir. 1975).  As noted supra Part III.B, "'the allegation in a single count of a conspiracy to commit several crimes is not duplicitous.' The conspiracy is one crime 'however diverse its objectives.'"  Reyes, 930 F.2d at 312 (quoting Braverman, 317 U.S. at 54).

Mitan then argues that under the Kelly test, 892 F.2d at 259, to determine whether a count charges a single or multiple conspiracy, Count One alleges at least three and perhaps four alleged conspiracies.  This Court analyzes each of the three Kelly prongs in reviewing Defendant Atherton's Motion to Dismiss.  See infra IV.B.5.a.  However, the Court notes several points related to Mitan's arguments on duplicty.

As to the first prong of the Kelly test, Mitan argues that the conspiracy's common goal as stated in the Indictment—to obtain money and property—is inconsistent with the four transactions, since in three of the four transactions more moneys were invested into the acquired companies than were taken out.  This argument would require the Court to assess evidence, which it will not do in the context of this Motion to Dismiss.  DeLaurentis, 230 F.3d at 660. Taking the Indictment's allegations as true, it sufficiently alleges a common purpose to obtain money and property from each of the four target companies named in the Indictment.

As to the second prong of the Kelly test, Mitan argues that the alleged conspiracy did not contemplate a continuous result that would not continue without continuous cooperation of the

-28-

conspirators because the timing of each of the four alleged fraudulent purchases did not overlap. However, this prong does not require any overlap in time between the various acts involved in the conspiracy.  Instead, this prong is "satisfied where alleged co-conspirators' participation is necessary or <u>advantageous</u> to the overall success of the venture."  <u>United States v. Padilla</u>, 982 F.2d 110, 114 n.5 (3d Cir. 1992) (emphasis in original) (citing <u>United States v. Salmon</u>, 944 F.2d 1106, 1117-18 (3d Cir. 1991)).  Since the Indictment alleges that Mitan was the central figure in instigating and carrying out the fraudulent scheme and was involved in each of the four fraudulent purchases (Superseding Indictment 3-4 ¶¶ 8-12), the Indictment sufficiently alleges that Mitan's participation in the scheme was both advantageous and necessary to its success.

As to the third prong of the <u>Kelly</u> test, Mitan argues that the participants to do not sufficiently overlap to allege a single conspiracy because Atherton, Pankratz, and Frank Mitan are not all alleged to be involved in each of the four fraudulent purchases.  However, Mitan himself is alleged to be involved in each of the four purchases.  Further, the Government need not show that each defendant knew all the details and goals in order to find a single conspiracy. <u>Kelly</u>, 892 F.2d at 260.  There is no evidence here, as there was in <u>Camiel</u> that there were separate conspiracies acting at cross-purposes with each other.  <u>Id.</u> (comparing facts to <u>Camiel</u>).

Therefore, none of Mitan's argument are sufficient to dismiss Count One.

b.    <u>Counts II-V (Mail and Wire Fraud)</u>

As to Counts Two through Five, Mitan again contends that his actions were not illegal based on evidence concerning specific amounts of accounts receivable and accounts payable. (Def. Mitan's Am. Mot. Dismiss ¶ 1).  As discussed above, a motion to dismiss does not weigh the sufficiency of the evidence but instead tests the allegations in the indictment, so the Court

will not consider arguments about sufficiency of the evidence or Mitan's ultimate guilt or

innocence.  Mitan repeats arguments from his initial Motion to Dismiss—that the alleged

interstate mail and wire transactions occurred after the alleged fraud had been executed, were

incidental to the alleged fraud, and were ordinary business communications.  As the Court

explained supra Part IV.B.1.b, interstate mailings and wires subsequent to the completion of the

scheme may still be in furtherance of the scheme to sustain fraud charges.  Ruuska, 883 F.2d at

264.  Further, the Indictment alleged that the mail and wire fraud communications occurred while

the fraudulent scheme was ongoing and that the communications contributed to the execution of

the scheme.  See Schmuck, 489 U.S. at 714-15 (1989).

 As to Count Five, Mitan raises the argument, similar to the one in his initial Motion to

Dismiss, that the Count should be dismissed because the November 27, 2005 email was sent after

the effective time period of the scheme.  However as discussed supra Part IV.B.1.b, the email

described in Count Five was alleged to further the scheme of diverting funds from Benny's

Cheese, and the Indictment states that the diversion of funds was on-going after Mitan gained

control.  (Superseding Indictment 5 ¶ 13(e)).  As such, Count Five is properly alleged to be wire

fraud that furthers the fraudulent scheme.

 Counts Two through Five will not be dismissed.

### c. Count VI (False Name)

 Mitan argues that Count Six, use of a false name in a fraud scheme, should be dismissed

because the alleged use of the name "John Smith" was not material and only incidental to the

alleged scheme to defraud.  The Indictment specifically alleges that on or about September 9,

2005, Mitan used and assumed and requested to be addressed as the false name "John Adams"

"for the purpose of conducting, promoting, and carrying on the scheme described in Counts One, Two, and Three [conspiracy and mail fraud] of this indictment and other unlawful business."  (Id. at 19 ¶ 2).  In addition, the Indictment describes in its general description of the conspiracy that Mitan used a false name when negotiating to purchase the target companies (id. 3 ¶ 8) and continued to use a false name at the closings when he failed to provide the full amount of money owed under the sale agreements (id. 4 ¶ 9).  The Indictment further describes how Mitan allegedly used the false name "John Adams" in approaching and negotiating to purchase three of the target companies described.  (See id. ¶¶ 13(a), 14(a), 15(a)).  Therefore, the Indictment alleges that Mitan's use of a false name was for the purpose of conducting the alleged fraudulent scheme, and Count Six will not be dismissed.

### d.      Count VII (False Declaration Before the Court)

Mitan argues that Count Seven should be dismissed because of selective prosecution. Although Mitan requested to file a supplemental Memorandum of Law on this point within thirty days of obtaining the new grand jury testimony, he has since filed a new motion for an evidentiary hearing on the basis of vindictive prosecution regarding Count VII.  As such, this Court will consider these arguments in the context of ruling on that motion at a later date.

### e.      Entire Indictment

Finally, Mitan argues that the entire indictment should be dismissed for multiple reasons. (Def.'s Am. Mot. Dismiss 2-5 ¶ 5(A)-(M)).

First, Mitan argues that the Indictment does not plead actual fraud, versus constructive fraud, which is necessary to uphold mail and wire fraud charges, citing Epstein v. United States, 174 F.2d 754 (6th Cir. 1949).  Epstein states that a scheme to defraud under the mail fraud statute

requires that the scheme embrace active or actual fraud and can not be maintained on constructive fraud.  174 F.2d at 766.  Epstein further defines actual fraud as "intentional fraud," which requires "intent to deceive or defraud," whereas constructive fraud is "a breach of legal or equitable duty."  Id. at 765.  Although this Court could not find a Third Circuit case engaging in a similar differentiation, the elements of mail fraud as enumerated by the Third Circuit require "specific intent to defraud."  Hedaithy, 392 F.3d at 590.  The Indictment alleges that Mitan "devised and intended to devise a scheme to defraud" in its description of the wire and mail fraud counts.  (Superseding Indictment 15 ¶ 2, 17 ¶ 2).  Therefore Mitan's argument about failure to plead actual fraud is unavailing.

Second, Mitan argues that the alleged breach of contract was neither "intentional, deliberate, and planned" nor "concealed," which he claims are both necessary in mail and wire fraud charges for breach of contract criminal charges, citing United States v. George, 477 F.2d 508 (7th Cir. 1973).  Although George deals with a mail fraud conviction, this Court was unable to find discussion of the legal arguments that Mitan advances.  The central holding in George on the sufficiency of the evidence to support a fraud conviction was that the government does not need to prove that the victim of a scheme to defraud was actually defrauded or suffered a loss as long as the schemer had an intent to defraud.  477 F.2d at 512.  Therefore, this Court will not entertain this argument further.

Third, Mitan argues that the Indictment does not plead that the alleged diversion of the accounts receivable was disguised or concealed as required to sustain a mail or wire fraud conviction, citing United States v. West, 549 F.2d 545 (8th Cir. 1977).  In West, the Court upheld the defendants' conviction for mail and wire fraud where it found that defendants had the

requisite intent to defraud in part based on defendants' concealment and disguise of their

activities.  Id. at 549-551.  However the case does not state that the actions of disguising or

concealing are necessary elements of mail or wire fraud.  Instead the Eighth Circuit in that case

relied on those actions to establish intent to defraud, which is a necessary element of mail or wire

fraud.  As explained in assessing Mitan's "actual fraud" argument, the Indictment sufficiently

alleges Kenneth Mitan's intent to defraud.

Fourth, Mitan argues that since the Indictment states that the target businesses were

"acquired" by Mitan's corporate entities, transfers from these companies would be authorized

and legal.  This argument ignores the fact that the Indictment specifically alleges that Defendant

used fraud to both obtain control of the businesses and drain their assets.  (Superseding

Indictment 1 ¶ 1).  Taking these alleged facts as true, the Indictment is sufficient to establish that

the acts perpetrated by Defendants were illegal.

Fifth, Mitan argues that a person authorized to write checks does not commit larceny by

chasing a check to himself, citing United States v. Howerter, 248 F.3d 198 (3d Cir. 2001).

However, Howerter is not relevant to establishing the sufficiency of Mitan's Indictment, since it

examines the standard for the crime of federal bank larceny, which Mitan is not charged with.

Sixth, Mitan argues that personal use of funds from one's own company cannot be fraud,

citing United States v. Grossman, 117 F.3d 255 (5th Cir. 1997).  The court in Grossman reversed

the defendant's convictions based on the government's failure to prove submission of false or

fraudulent documents and insufficient evidence to show the mens rea element of wire fraud and

conspiracy.  Id. at 261.  Grossman does not make the specific holding that personal use of

company funds can never sustain a fraud conviction.  As previously described, Mitan's argument

ignores the specific allegations in the Indictment that Mitan fraudulently obtained the target

companies and fraudulently diverted their assets.  The Indictment's allegations that Mitan then

drained the target companies' assets for "personal enrichment and continuing promotion of the

fraudulent scheme" (Superseding Indictment 2 ¶ 1) therefore flow from the allegations of

fraudulent activities, so they may constitute fraud.

Seventh, Mitan repeats the argument from his initial Motion to Dismiss that corporate

stock is an intangible property right and is not subject to mail or wire fraud prosecution, citing

McNally, 483 U.S. 350 and Regan, 713 F.Supp. 629.  This Court rejects that argument for the

multiple reasons explained supra Part IV.B.1.a.

Eighth, Mitan again repeats an argument from his initial Motion to Dismiss that the

Indictment does not allege utilization of United States mail and wires in conducting the fraud and

therefore the conduct is not chargeable under the federal mail and wire fraud statues.  As

explained supra Part IV.B.1.b, the alleged use of  interstate mail and / or wire need not be an

essential element of the fraudulent scheme, but instead must be in furtherance of the scheme.

See Maze, 414 U.S. at 400; Ruuska, 883 F.2d at 264.  Further, to prove a conspiracy to commit

mail and wire fraud, the government need not prove an explicit agreement among the

conspirators to use the interstate mails or wires in furtherance of the conspiracy but merely show

that the use of interstate mail or wires was reasonably foreseeable at the time the conspiracy was

formed.  Turley, 891 F.2d 59-60 (holding that the conspiracy offense should not have a higher

scienter requirement than the substantive offense).  The Indictment contains sufficient facts to

allege that the specific counts of wire and mail fraud furthered the allegedly fraudulent scheme.

Ninth, Mitan argues that the target company sellers were not victims because they had no

-34-

interest in the companies' money or property once the companies were acquired and that the alleged shell accounts were the newly-acquired companies' main operating accounts, so there was no fraud.  These arguments will be tested at trial.  At this stage, Mitan's Indictment contains sufficient allegations of fraudulent purchase and diversion of the target companies' assets to sustain the offenses charged in the Indictment.

Finally, Mitan repeats the argument in his initial Motion to Dismiss that ordinary, innocent, and incidental corporate mailings can not form the basis of mail fraud charges, citing Brickey, 296 F.Supp. 742 and Chason, 451 F.2d 301.  As explained supra Part IV.B.1.b, the Indictment alleges that the specific mail fraud counts sufficiently allege that the mailings were for the purpose of executing the fraudulent scheme.

### 3.   Kenneth Mitan's Motion to Dismiss the Superseding Indictment

Mitan argues that the Superseding Indictment must be dismissed based on a violation of Federal Rule of Criminal Procedure 6(e)(1), which relates to the recording of grand jury proceedings.  Mitan argues that because there is a three-minute gap in the grand jury transcript between 10:56 a.m. and 10:59 a.m., there is a violation of the Rule and that the remaining portions of the transcript are tainted.  The Rule states: "Except while the grand jury is deliberating or voting, all proceedings must be recorded by a court reporter or by a suitable recording device."  Fed. R. Crim. P. 6(e)(1).

The referenced portion of the transcript reads as follows:

Mr. Cullen: Do any members of the grand jury have any questions for Inspector Clark?
Grand Jury: (No response.)
Mr. Cullen: Seeing none, I would ask if Inspector Clark can be excused.
The Foreperson: Thank you.
Mr. Cullen: You may be excused.

> (Witness excused.)
> (Whereupon, the testimony of Inspector George Clark concluded at 10:56 a.m.)
> (Whereupon, the testimony of Inspector George Clark commenced at 10:59 a.m.)
> By Mr. Cullen:
> Q. Again Inspector Clark, I'm reminding you you're still under oath.
> A. Yes.
> Q. I believe the grand jurors had some questions about Grand Jury Exhibit Number 5, which I'm going to put back in front of you. . . .

(Tr. 13-14, Apr. 23, 2009). As the transcript makes clear, there was a three-minute gap in the transcript because the sole grand jury witness was excused, but then questioning resumed because the grand jury had a question. Further, Rule 6(e)(1) would not require any grand jury deliberations that may have occurred during this gap to be recorded. There is no support in the testimony for Mitan's argument that the prosecutor misconstrued the grand jury's additional questions to Inspector Clark. This Court finds no violation of Rule 6(e)(1), and Mitan's Motion to Dismiss the Superseding Indictment will be denied.

<u>          4.       Bruce Atherton's Motion to Dismiss</u>

<u>              a.       Duplicitous Conspiracy Charge</u>

Defendant Atherton moves to dismiss Count One of the Indictment on the grounds of duplicity, claiming that it improperly charges a single conspiracy where the facts allege multiple conspiracies. "A single agreement to commit several crimes constitutes one conspiracy. By the same reasoning, multiple agreements to commit separate crimes constitute multiple conspiracies." <u>U.S. v. Broce</u>, 488 U.S. 563, 570-571 (1989). Atherton asserts that to establish a single conspiracy, "[a] common purpose of a single enterprise must motivate each participant and each act." <u>United States v. Rosnow</u>, 977 F.2d 399, 406 (8th Cir. 1992). Atherton argues that the facts alleged in the Indictment fail to establish this common purpose and instead allege parallel,

independent criminal violations.

Atherton, however, is mistaken in contending that common purpose is a necessary element of conspiracy.  The Third Circuit uses the three-step Kelly test to distinguish between single and multiple conspiracies.  Greenidge, 495 F.3d at 93 (quoting Kelly, 892 F.2d at 259); see also United States v. Gambone, 125 F.Supp.2d 128, 136 (3d Cir. 2000) (using the Kelly test to assess defendant's motion to dismiss on duplicity grounds); United States v. Kemp, 500 F.3d 257, 287-292 (using the Kelly test to find variance between the indictment, charging a single conspiracy, and the evidence at trial, supporting multiple conspiracies, but holding that no substantial prejudice resulted from the variance).  As stated supra Part III.B, the three elements of the Kelly test are: (1) whether there was a common goal among the conspirators, (2) whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators, and (3) the extent to which the participants overlap in the various dealings.  In this case, the single conspiracy count meets each factor of the test.  Still, even if one element were missing, a single conspiracy could still be established.  The Third Circuit clarified the Kelly test in Padilla, 982 F.2d 110, by stating that "the absence of one factor [of the Kelly test] does not necessarily defeat an inference of the existence of a single conspiracy."  Id. at 115.

Under the first factor of the Kelly test, the Indictment sufficiently alleges a common goal, to use "fraudulent pretenses to obtain control of those businesses, and continue[ ] the fraud long enough to drain the businesses' assets for both the defendants' personal enrichment and continuing promotion of the fraudulent scheme."  (Superseding Indictment 1 ¶ 1).  Atherton argues that this interpretation of common purpose is too broad, claiming that although the goals

-37-

of each scheme were similar, they were not common.  However, courts have interpreted that in a conspiracy, distinctly separate steps taken can all be in furtherance of a common goal.  United States v. Adams, 759 F.2d 1099, 1110 (3d Cir. 1985) (where separate drug transactions were steps taken in furtherance of the common goal to sell drugs for profit); United States v. Fischbach & Moore, Inc., 750 F.2d 1183 (3d Cir. 1984) (where fourteen different instances of price fixing in an antitrust conspiracy constituted a single conspiracy).  Although the Indictment alleges four different fraudulent purchases, it correctly alleges these purchases were in furtherance of the common goal to fraudulently obtain control of the businesses and drain their assets.

The Indictment also properly alleges that the scheme was dependent on the continuous cooperation of the conspirators, fulfilling the second prong of the Kelly test.  The Third Circuit considered this aspect of the test "satisfied where alleged co-conspirators' participation is necessary or advantageous to the overall success of the venture."  Padilla, 982 F.2d at 114 (citing Salmon, 944 F.2d at 1117-18 (3d Cir. 1991)) (emphasis in original).  Though the Indictment does not allege that Atherton's continued participation in the conspiracy was necessary, it does allege that his participation was advantageous.  Paragraphs 15(c) and 16(d) allege that Atherton and Kenneth Mitan fraudulently instructed owners of two businesses to deposit funds into shell accounts opened by Defendants.  The Indictment further alleges that funds from these shell accounts were then distributed to Defendants and / or corporate entities controlled by Defendants. (Superseding Indictment 7-9 ¶¶ 15(c)-(d), 16(d)-(e)).

Atherton argues these allegations do not establish his "knowledge of the overall scheme," quoting United States v. Chandler, 388 F.3d 796, 806 (11th Cir. 2004), because he is not alleged to have been involved in two of the four fraudulent purchases.  However, "[a] single conspiracy

finding does not require every member to participate in every transaction." Padilla, 982 F.2d at

115 (quoting United States v. DeVarona, 872 F.2d 114, 119 (5th Cir. 1989)).  The charges

regarding Atherton's participation in fraudulently draining the assets of two of the four

businesses are sufficient to show that his actions were advantageous to the success of the venture,

fulfilling the Padilla standard.

Finally, the Indictment establishes that there was a sufficient degree of participant overlap

in the conspiracy to fulfill the third factor of the Kelly test.  Kelly explains this third factor as:

"'the government need not prove that each defendant knew all the details, goals, or other

participants' in order to find a single conspiracy."  Kelly, 892 F.2d at 260 (quoting United States

v. Theodoropoulos, 866 F.2d 587, 593 (3d Cir. 1989)).  A single conspiracy does not become a

multiple conspiracy merely due to a change in membership.  Id. at 259.  Count One alleges that

Atherton and Kenneth Mitan worked jointly to instruct the owners and employees of target

companies HDI and Pruscino Brothers Produce to direct company funds into shell accounts

opened by Defendant Frank Mitan in the case of HDI and by themselves and Defendant Pankratz

in the case of Pruscino Brothers.  (Superseding Indictment 7 ¶ 15(c), 9 ¶ 16(d), 13 ¶ 23).

Additionally, in listing the "overt acts" of the conspiracy, the Indictment alleges specific amounts

of money that Atherton caused to be sent to accounts controlled by co-Defendants (Id. 13-14 ¶¶

23, 27).  Based on these allegations, Defendant Atherton's participation sufficiently overlapped

with that of his co-Defendants.

Accepting the alleged facts of the Indictment as true, this Court need only determine

whether the facts constitute a violation of the law under which the defendant is charged.  Stewart,

955 F. Supp. at 386.  Pursuant to the Kelly test, this Court finds that the conspiracy alleged in the

Indictment was correctly charged as a single conspiracy rather than multiple conspiracies.

    b.  <u>Adequacy of Allegations to State an Offense</u>

   Atherton also argues the Indictment fails to state an offense because it does not

adequately allege Kenneth Mitan and the other Defendants' fraudulent conduct.  However, the

Indictment's allegations, taken as true, describe multiple instances of Defendants' fraudulent

conduct, including using a false name to negotiate the purchase of target businesses, acquiring a

controlling interest in the businesses through fraudulent means, failing to provide the full amount

of money at closing, in some instances obtaining blank checks from the target businesses based

on promises to transmit the money shortly and based on representations that these checks would

be used to pay vendors and other creditors, opening shell accounts and diverting funds from the

target business bank accounts to these new accounts, placing representatives on-site at some

businesses to facilitate the fraudulent scheme, using funds in the shell accounts for purposes

other than the maintenance of the target businesses, and diverting funds to Defendants or their

corporate entities.  (Superseding Indictment 4 ¶¶ 9-12).

   In addition Atherton reiterates that the Indictment fails to establish his "knowledge of the

overall scheme."  Atherton asserts that the allegations do not charge his involvement in the

fraudulent purchase of the businesses, but only their operation after sale.  While true, this

contention does not preclude his participation in the conspiracy.  "Knowledge of all the particular

aspects, goals, and participants of a conspiracy . . . is not necessary to sustain a conviction."

<u>Adams</u>, 759 F.2d at 1114.  The Indictment charges that the conspiracy's purpose was not only to

fraudulently obtain control of the businesses, but also to drain the businesses' assets for

Defendants' personal use.  (Superseding Indictment 1-2 ¶ 1).  Atherton need not have

participated in each act to be liable for the whole conspiracy.  See Padilla, 982 F.2d at 115.

In Blumenthal v. United States, 332 U.S. 539 (1947), the Supreme Court recognized that elaborate schemes "mature by successive stages . . . . not all those joining in the earlier ones make known their participation to others later coming in."  Id. at 556.  Thus the Court ruled that "the law rightly gives room for allowing the conviction . . . without requiring evidence of knowledge of all its details or of the participation of others."  Id. at 557.  As the Government has alleged that a single conspiracy existed, it need not allege Atherton's knowledge of or participation in each action in furtherance of the conspiracy.  The allegations of Bruce Atherton's involvement in particular aspects of the scheme are sufficient to allege his involvement in the overall conspiracy.  Therefore the Indictment is sufficient under the Vitillo standard to allege the elements of the conspiracy count and apprise Atherton of the charge he must meet.

5.    Frank Mitan's Joinder in Motions to Dismiss

Frank Mitan joined in his co-Defendants Motions to Dismiss by oral request.  Since this Court is denying the Motions as to his co-Defendants and the Indictment's allegations as to Frank Mitan do not raise any obvious legal issues not raised by the co-Defendants' Motions, this Court will also deny Frank Mitan's oral Joinder in the Motions to Dismiss.

**V.    Conclusion**

After thorough review each of the legal arguments advanced by Defendants, for the foregoing reasons, the Court will dismiss the described Motions to Quash and Motions to Dismiss of Defendants Kenneth Mitan, Frank Mitan, and Bruce Atherton.

An appropriate Order follows.

O:\Criminal Cases\08-760 Mitan, us v\Mitan - Memo re Mot to Quash, Dismiss.wpd

-41-