**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| KENNETH MITAN and | : | NOs.  08-760-1 |
| FRANK MITAN | : | 08-760-2 |

**MEMORANDUM RE: GOVERNMENT ACCESS TO**
**DEFENDANT'S TELEPHONE CONVERSATIONS**

Baylson, J.                                         September 25, 2009

Defendants have moved to dismiss the indictment, or for other relief, arising out of

governmental interceptions of telephone calls from Defendant Kenneth Mitan ("Mitan"), an

inmate at the Federal Detention Center ("FDC"), who is awaiting trial in this case (Doc. Nos.

331, 340).  The facts are set forth below in summary fashion, based on numerous filings by the

government, Kenneth, his Co-Defendant, Frank Mitan, Kenneth's father ("Frank"), and from

several pretrial hearings that the Court has held on this issue.

The facts start with two decisions, one by the Court, which has resulted in Kenneth being

detained pretrial, and the other by Kenneth to represent himself pro se, and having in forma

pauperis status in this case.

In the colloquy which the Court held with Kenneth on his decision to represent himself

pro se, Kenneth expressed unreserved insistence that he would represent himself in this case.  He

acknowledged during the colloquy his understanding of the consequences, which the Court

accepted, particularly in view of the fact that the Defendant is a law school graduate, although he

never practiced law.  However, the Court appointed stand-by counsel, Ann Flannery, Esquire, a very experienced and highly competent individual practitioner.

Co-Defendant Frank is not detained, but also has in forma pauperis status.

As a result of Kenneth's Motion for a Protective Order concerning his communication rights while detained and representing himself pro se, the Court required the government to prepare a protocol, which was approved by Order dated May 11, 2009 (Doc. No. 185).  The first paragraph of the protocol stated as follows:

> When undertaking any communication related to his legal defense, Defendant Mitan will follow all procedures established by the Federal Detention Center to protect the confidentiality of such communications.  These procedures will govern defendant Mitan's oral and written communications related to his legal defense, as well as his in-person conversations with stand-by counsel, and counsel for co-defendants during legal visits at the Federal Detention Center.

The second paragraph of the protocol established a procedure that when FDC staff needed to contact the government concerning Kenneth, it would do so in a way that would not disclose his legal work product.  The third paragraph of the protocol related to a procedure to assist Kenneth in securing documents as part of his pretrial preparation.

As the pretrial proceedings progressed, Kenneth filed an ex parte motion for an extension of the Protective Order to communications with experts and witnesses, which the Court ordered filed without placing it under seal (Doc. No. 243).  As reflected in the motion, the Court had approved Kenneth's (and Frank's) requests for appointment of experts and investigators. Kenneth was concerned that the prison's monitoring of his telephonic communications with these individuals from the FDC would be disclosed to the government.  The Court denied the request

for a protective order, stating as follows: "Individuals detained in prison send and receive numerous communications with their counsel and investigators every day, and prison regulations prohibit prison officials providing this information to law enforcement personnel.  There is no need for a protective order in this particular case. . . .  Mitan does not have any grounds to believe that the government has, in any way, interfered with his right to communicate with his investigators."

The Court's statement was not entirely correct.  As set forth in various filings in this case, FDC regulations preclude monitoring of inmate phone calls to attorneys, on separate telephone lines that are limited to privileged communications.  Other telephone communications are on separate telephone lines as to which inmates are specifically advised that FDC monitors these telephone calls, such as there is no expectation of privacy.[1]

There does not appear to be any specific prison regulation prohibiting prison officials from providing information from monitored phone calls to law enforcement personnel.[2]

As a result of a government filing, shortly after the July 28, 2009 Order was entered, the Court learned for the first time that the government had been regularly reviewing recordings of Kenneth's calls with his family, and scheduled a hearing on August 31, 2009.  See Order dated August 28, 2009 (Doc. No. 288).

---

[1]Numerous cases have upheld the propriety of prisons monitoring inmate telephone calls, even related to pretrial detainees.  There is no issue in this case about the propriety of this practice.  The issue here is the prosecutorial access.

[2]Although not present in this case, a situation could arise where a prison employee monitoring an inmate's telephone calls learns of plans for criminal activity, and it would be appropriate for such information to be provided to law enforcement personnel, perhaps on an emergency basis.

At this hearing, the government revealed that, because it had reason to believe that Kenneth had been involved in conduct constituting obstruction of justice, it had subpoenaed the FDC to produce telephone communications by Kenneth and had done so with the approval of the Department of Justice Professional Responsibility Office, and had initially arranged for "taint" agents and prosecutors (not involved in this case) only to review this material.

The government further represented that once the protocol had been approved as of May 11, 2009, it saw no further need for the taint procedure, reasoning that Kenneth had been advised of his need to abide by prison regulations, which clearly advised prisoners of the FDC's monitoring of non-privileged telephone calls.  The government did not disclose, in connection with the protocol, that the trial prosecutors were investigating obstruction of justice and had secured access to these phone calls.

The government's disclosures triggered numerous filings by the government and both Defendants, and also led to further discussions on this topic at the final pretrial conference on September 17, 2009.  In the course of its filings, the government made the following representations:

1.      It issued the subpoenas and secured access of the telephone calls because it had initiated an investigation into obstruction of justice by Kenneth, based on various information received from others.  The Court finds from these representations that the government had probable cause to initiate this investigation, and that there is no showing that it has been conducted in bad faith.  (Gov't Memorandum, Doc. No. 289, p.13).

2.      It has only listened to telephone calls Kenneth made to a telephone number that he had represented to the FDC as his mother's number, and that all of these phone calls, except for

one noted below, were with his mother or brother.

    3.    The one exception is a phone call with an individual who appeared to be one of Kenneth's investigators, and the agents' listening to this conversation was terminated immediately without receiving any substantive information.  (Tr. 8/31/09, p. 4).

    4.    It has not listened to or reviewed any conversations between Kenneth and his stand-by counsel, with his father, or with any other member of the defense team.[3]  (Id. at 17).

    5.    It has no knowledge of any of Kenneth's communications with any investigators, experts, or anyone else retained professionally in this case.

    6.    Kenneth was cautious about not revealing any defense strategy during these calls. (Tr. 8/31/09, pp. 14-15).  None of the conversations which the government has knowledge of, which Kenneth had with his mother or brother, concern trial tactics or trial strategy.  See the government's filing of September 23, 2009, p. 5.[4]

**Legal Discussion**

    Initially, the Court expresses some serious concerns that the government did not disclose, even in an ex parte filing with the Court, the monitoring of Kenneth's telephone conversations when it prepared the protocol and submitted it for the Court's approval in May 2009.  Further, the Court rejects the government's arguments that principles of attorney-client privilege and

---

[3]The Court recognizes and agrees that Kenneth has a joint defense privilege with his stand-by counsel and his Co-Defendants and their counsel.  See United States v. LaCroy, 348 F.Supp. 2d 345 (E.D. Pa. 2004).

[4]This representation is strongly disputed by Ms. Flannery in her Supplemental Memorandum (Doc. No. 340), at least as to those tapes she has reviewed, which appear to be prior to May 11, 2009.  At some point prior to the defense having to decide whether to put on a defense, the Court will determine what resolution is necessary concerning this dispute.

attorney work product, and Kenneth's waiver of these, are relevant in assessing the Defendants' Motion to Dismiss.  Kenneth was unable to use the FDC's "privilege" telephone lines to call his mother.  Nonetheless, Kenneth is entitled to prepare his defense with communications with witnesses, investigators, and experts without knowledge of the prosecutors in this case.

The Court has previously noted that Kenneth, being incarcerated, should have made more use of his stand-by counsel in the earlier stages of this case.[5]  Kenneth retains an attorney-client privilege relationship with his stand-by counsel.  The fact that Kenneth elected to represent himself pro se only results in his losing the advantage of privileged communications with an attorney defending him in this case.  Although Kenneth also has a privilege to communicate in confidence with other members of the joint defense, the government has not intercepted any of those conversations.

Kenneth's brother, Keith Mitan, and mother are not individuals in the joint defense group. The Court rejects Kenneth's assertion that his communications with his brother are privileged. There is some uncertainty in the record as to his brother's status as an attorney.  Although the brother was an attorney at some point, Kenneth acknowledges that he is now in suspended status. Nonetheless, Keith Mitan does not represent Kenneth in this case.  Kenneth asserts that his brother has represented him in other transactions, some of which are the subject matter of the indictment, and the Court will assume that Kenneth's conversations with his brother about those transactions at that time were privileged.  That privilege does not extend to discussions between Kenneth and Keith concerning this case, because Kenneth is representing himself in this trial.

---

[5]Kenneth has recently used Ms. Flannery's expertise in a wide variety of pretrial matters, and has requested her to participate in the trial, which the Court has approved.

The purpose of the privilege is to protect communications regarding the seeking or giving of legal advice, and all of those prior transactions have been completed. There is no need for Kenneth to secure legal advice as to those completed transactions which are the subject matter of the indictment in this case.

Given the government's representations in this case, the Court is unable to find prejudice at this time to either Defendant sufficient to require dismissal of the indictment. Of course, it is possible that either Kenneth or Kenneth's mother or brother may have a different view of the facts, but they have not yet been heard. Some of the telephone calls that have been monitored with Kenneth's mother concern a Co-Defendant, Charro Pankratz, who has since pleaded guilty and is identified as a government's witness. Her testimony may in part reflect the government's representation that there were some efforts at obstruction of justice.

Although the Court has determined a lack of prejudice requiring dismissal at this point, that does not necessarily end the Court's concerns in this case regarding these facts.

Although Kenneth had no reason to expect privacy in his calls, that does not equate to any consent that the agents and prosecutors working on this case would gain access. The Court ascertains a major distinction between prison authorities having access to prisoners' phone calls for purposes of prison security and discipline, and the prosecutors of that pretrial prisoner having the same access for purposes of gaining advance knowledge of the pretrial prisoner's trial strategy and potential witnesses, particularly where the prisoner is representing himself pro se.

If Kenneth were not detained, the government would obviously need to go through the procedures of Title III to secure interception of his telephone communications. Only because Kenneth is detained has the government been able to secure this information by subpoena,

without any kind of court approval.  Given the sensitivity of protecting the rights to a fair trial of a defendant representing himself pro se, and being detained, some of the issues raised by the Defendants could have been avoided by the government continuing the use of the taint agents throughout this matter and/or filing ex parte notice to the Court that this monitoring was taking place in connection with the obstruction investigation.

On the other hand, the government argues that since Kenneth had reason to believe the government may have access to his calls to his mother, he should have relayed such communications through Ms. Flannery, or have asked the Court for an order allowing Kenneth to call his mother on the "privilege" line.  Kenneth was not reluctant to ask for special treatment regarding computer access, as to which this Court had several hearings so that Kenneth could maximize use of an FDC laptop which he used for trial preparation.  In the initial colloquy, the Court advised Kenneth of the many disadvantages of a defendant representing himself pro se. The facts of this Memorandum are further proof of this truism.

The Court, once again, emphasizes that there is no issue here as to the propriety of the FDC's monitoring Kenneth's telephone calls; the issue is the government's accessing those calls in a pretrial context.  In doing so, the government may have, whether purposely or inadvertently, secured information relating to Kenneth's defense strategy, discussions with potential witnesses, etc.  The government represents that it has no such information, but Defendants disagree. Defendants assert that the government's conduct has denied them their Fifth and Sixth Amendment rights, but their arguments ignore the significance that the government had cause to investigate possible obstruction by Kenneth.  Defendants' argument that this investigation was improper or nonexistent is rejected.

If Kenneth calls his mother or brother as witnesses in his own defense, the Court may have a voir dire prior to their testimony to determine whether his defenses have been compromised in a manner not yet ascertainable from the current record.  If so, Defendants may be entitled to relief, the nature of which remains for decision.  However, a dismissal of the indictment is not appropriate at this time.[6]

An appropriate Order follows.


O:\Criminal Cases\08-760 Mitan, us v\Mitan 2 Defs - Memo gov access to telephone calls.wpd

---

[6]The Court rejects Kenneth's suggestions as alternative relief that the trial be delayed and he be released while he appeals this Court's denial of dismissal, and that an independent judicial officer review the transcripts and/or tapes of the conversations.  The Court has reviewed the Defendants' reliance on U.S. v. Yousef, 327 F.3d 56, 166 (2d Cir. 2003) (use of a firewall concerning an informant in a terrorism case) and rejects any argument that any holding in that case is applicable to this case.  After substantial research, neither the parties nor the Court have found any case with similar facts.  The Court leaves open for further consideration whether the undersigned should review these materials.