IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| KENNETH MITAN | : | NO. 08-760-1 |
| FRANK MITAN | : | NO. 08-760-2 |

**MEMORANDUM RE: ADMISSIBILITY OF EVIDENCE**

**Baylson, J.**                                                                   **October 30, 2009**

The Court has ruled on several evidentiary issues at the trial, and this Memorandum will explain the basis for these rulings. The rulings are as follows:

      1.      The testimony of Kenneth Mitan and Frank Mitan at an arbitration proceeding brought by the Williams Fund in relation to Engel Corporation is admissible against the declarant, and also as statements made during and in furtherance of the conspiracy, and admissible against both. Therefore, Defendants' Motions to Exclude Statements of Co-Defendants (Doc. Nos. 361, 363, 400, 414) are denied.

      2.      The government's Motion to Admit Evidence of IRS Tax Records (Doc. No. 380) was granted to allow testimony that no tax returns were filed for the Williams Fund. The government may argue this fact may show that it was a "shell" company, but the government may not argue that either Defendant has any criminal liability relating to this failure to file tax returns.

      3.      Concerning evidence that Defendants used litigation or the threat of litigation, the Court has admitted this evidence, and having done so, the Court rules that the government may mention this evidence in its closing argument, but may not refer to it as a "manner or means" because it is not alleged in the indictment.

I.     **Admission of Statements from Arbitration Proceedings**

    A.     **Factual and Procedural Background, and Proposed Evidence**

In 2006, a dispute between the Williams Fund Private Equity Group and David Engel resulted in arbitration proceedings between the parties. On August 14 and 15, 2006, various witnesses—including Defendants Kenneth Mitan ("Kenneth") and Frank Mitan ("Frank")—gave testimony in hearings related to these proceedings. The government now seeks to introduce portions of the arbitration testimony given by both Defendants as evidence in the present case. Defendants' objections form the basis of the instant dispute.

Pursuant to the Court's Order of August 28, 2009 (Doc. No. 284), the government filed its Exhibit and Witness Disclosures on September 16, 2009 (Doc. No. 317). On page 3, in the section titled "Engel Corporation," the government noted that Government Exhibit 44 ("GX 44") encompassed "Transcripts of Arbitration, August 14-15 2006 (USA009753-USA010038)."

On September 28, 2009, Kenneth filed a Motion to Exclude Co-Defendant's Statements (Doc. No. 361). Also on September 28, 2009, Kenneth filed a Supplemental Memorandum in Support of his Motion to Exclude Statements of Co-Defendants (Doc. No. 363) ("Supp. Memo. in Support of Mot. to Exclude"), in which he argued for the exclusion of the statements made by both himself and Frank at the arbitration hearings. Specifically, Kenneth argued that the nearly 300 pages of arbitration testimony the government sought to introduce at trial included testimony about subjects excluded from this case and beyond the scope of the indictment, included hearsay questions quoting statements of others, would serve to confuse the jury, introduced issues and transactions not admitted as 404(b) evidence that are highly prejudicial, and would be unduly prejudicial, thereby failing Federal Rule of Evidence 403's balancing test. (Supp. Memo. in

Support of Mot. to Exclude 1.)  Thus, Kenneth requested that the arbitration testimony be excluded, or, at a minimum, the government narrow its proposed testimony and give notice of proposed excerpts to Defendants.  (Supp. Memo. in Support of Mot. to Exclude 1, 2.)

Additionally, Kenneth argued that introducing Frank's arbitration testimony against him would violate Kenneth's Sixth Amendment right to confront witnesses against him, as explained in Crawford v. Washington, 541 U.S. 36 (2004).  (Supp. Memo. in Support of Mot. to Exclude 1-2.)

The government responded in a letter to the Court dated October 2, 2009, in which it stated its intent to introduce sworn testimony made by each of Defendants at the August 14-15, 2006 arbitration hearings between the Williams Fund and David Engel.  The government argued that its evidence would show that Defendants Kenneth and Frank Mitan "repeatedly attempted to further the conspiracy by using actual and threatened litigation to intimidate their victims, take their assets, and obscure the fraudulent nature of the Mitan scheme."  Thus, where the evidence would show that the arbitration was used to intimidate and further victimize David Engel as part of the conspiracy, the government sought to introduce statements made at the arbitration by both Frank and Kenneth against each other as co-conspirator statements under Federal Rule of Evidence  801(d)(2)(E) ("Rule 801(d)(2)(E)"), and against each declarant-Defendant as a party admission under Federal Rule of Evidence  801(d)(2)(A) ("Rule 801(d)(2)(A)").

This issue was discussed at a hearing before the Court on October 7, 2009, and the Court requested that the parties brief the issue further.  Defendant Kenneth Mitan, joined by Defendant Frank Mitan, responded on October 12, 2009 in his Memorandum Requested by the Court in Support (Doc. No. 400) ("Def.'s Memo in Support").  The government responded in a letter to

the Court dated October 9, 2009. The government limited its proposed evidence from the arbitration hearing to about 30 pages. The parties' contentions are summarized below.

### 1. Defendant Kenneth Mitan's Contentions

Defendant Kenneth Mitan argues that the arbitration testimony is not admissible for several reasons. First, Kenneth argues that the testimony is hearsay because the statements were not made in the course and in furtherance of the charged conspiracy, and therefore, they fail to qualify as co-conspirator statements under Rule 801(d)(2)(E). (Def.'s Memo in Support 1.) Kenneth further argues that the indictment fails to allege the use of actual and threatened litigation to intimidate victims, take victims' assets, and obscure the fraudulent nature of the Mitans' purported scheme, and that the government now improperly attempts to "bootstrap" this evidence of previous litigation into the indictment's conspiracy charges. (Def.'s Memo in Support 1-2.) Thus, Kenneth argues that the statements are inadmissible hearsay and should be excluded. (Def.'s Memo in Support 2.)

Second, Kenneth argues that admitting the arbitration testimony of Frank Mitan against Kenneth (and vice versa) would violate each Defendant's Sixth Amendment right to confront witnesses against him. (Def.'s Memo in Support 2.) Kenneth argues that neither Defendant was present at the arbitration testimony of the other, and that neither was in a position to cross-examine the other to protect their individual interests. (Def.'s Memo in Support 2.) Thus, Kenneth argues that because the arbitration testimony is "testimonial" in nature, the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), bars its admission. (Def.'s Memo in Support 2-3.)

Third, Kenneth argues that the Court's introduction of the arbitration statements only

against the individual declarant would violate the rule of Bruton v. United States, 391 U.S. 123 (1968), and thus would violate each co-Defendant's Sixth Amendment rights. (Def.'s Memo in Support 3.) Specifically, Kenneth argues that because the statements made by one co-Defendant necessarily implicate the other co-Defendant, Bruton is violated if the statements come in against the declarant, regardless of any limiting instruction to be given to the jury. (Def.'s Memo in Support 4.) Kenneth argues that if the statements are admitted, the trials must be severed. (Def.'s Memo in Support 3, 4.)

Fourth, Kenneth argues that the specific portions of arbitration testimony are so out of context that they are inherently unfair, necessitating exclusion under Rule 403. (Def.'s Memo in Support 4.)

### 2. Government's Contentions

The government argues in its October 9, 2009 letter to the Court that Rule 801(d)(2)(E) applies to the arbitration testimony even after the Supreme Court's Crawford decision, and that statements made in furtherance of a conspiracy are, by their definition, not hearsay. The government further argues that case law does not undermine the efficacy or viability of the long-standing rule that statements made in furtherance of a conspiracy do not implicate the Confrontation Clause because such statements are themselves not hearsay.

### B. Analysis

#### 1. Admissibility of Arbitration Testimony Against the Declarant

During the trial, the Court ruled that testimony which each Defendant gave in an arbitration proceeding involving Engel Corporation was admissible against the declarant pursuant to Rule 801(d)(2)(A). Defendants argue that this testimony was inadmissible because it

offends Bruton v. United States, 391 U.S. 123 (1968), where, after a multi-defendant trial, the Supreme Court held that the introduction of testimony about one defendant's incriminating statement which implicated a co-defendant was unconstitutional because the co-defendant had no opportunity to cross-examine the defendant who made the statement, but did not testify. Further, the Bruton court held that a limiting instruction was insufficient to rectify jury exposure to the incriminating statement.

The Supreme Court has made clear that Bruton created a "very narrow exception" to the "almost invariable assumption of the law that jurors follow their instructions." Richardson v. Marsh, 481 U.S. 200, 206 (1987). Indeed, the Bruton rule "applies only in those relatively rare contexts where the statement is 'so inculpatory' as to the defendant that the 'practical and human limitations of the jury system cannot be ignored.'" United States v. Morris, No. 07-0020, 2008 WL 5188826, at *12 (W.D. Pa. Dec. 8, 2008) (quoting Bruton, 391 U.S. at 135-36).

The Supreme Court, in Richardson, 481 U.S. at 208, ruled that when a co-defendant's confession does not, on its face, incriminate the petitioner, and does so only when linked with other evidence, it may be introduced in a joint trial with a limiting instruction. See also United States v. Fleet Mgmt., Ltd., No. 08-0279, 2009 WL 2581710, at *3 (E.D. Pa. Aug. 20, 2009) ("Statements that become incriminating 'only when linked with evidence introduced later at trial' do not implicate Bruton's 'narrow exception' to the general rule that limiting instructions can cure any prejudice associated with the introduction at a joint trial of evidence which is technically admissible against only one defendant. In other words, only 'facially incriminating' statements merit separate trials or exclusion under Bruton." (citations omitted)). The Third Circuit applied this rule in United States v. Homick-Van Berry, Nos. 06-2196, 06-2212, 2007

WL 2050873, at *3-4 (3d Cir. Jul. 18, 2007) (non-precedential), where Judge Barry held that where a co-defendant's out-of-court statements were not "powerfully incriminating on their face," Bruton was not violated when the statements were admitted into evidence against him, and the court gave the jury an instruction not to consider the evidence against the other co-defendant. Id. at *4.  Judge Barry concluded that "[w]hatever incriminating value [the statements] may have had . . . was derived by inference from other evidence introduced at trial.  Under the circumstances, we conclude that the Court's limiting instruction was sufficient to avoid a Confrontation Clause violation."  Id.

Similarly, in United States v. Weiner, No. 08-0614, 2009 WL 1953182, at *6 (E.D. Pa. July 2, 2009), Judge Surrick followed Richardson when he held that extrajudicial statements made by a co-defendant did not foreclose those statements from being admitted as evidence at a joint trial with the defendant.  Judge Surrick stated:

> The [Supreme Court in Richardson] reasoned "it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence" when it becomes incriminating only after linkage with other evidence introduced later at trial. . . .  In contrast, "[s]pecific testimony that 'the defendant helped me commit the crime' is more vivid than inferential incrimination, and hence more difficult to thrust out of mind."  The extrajudicial statement must be incriminating on its face in order to trigger a Bruton concern.  Exclusion is not warranted under Bruton if the statement merely becomes incriminating by inference after its linkage with other evidence at trial.

Id. at *6-7 (emphasis added) (citing Richardson, 481 U.S. at 206, 208) (citations omitted).

Here, the arbitration testimony was not incriminating on its face and was made in a civil proceeding, and each defendant had the opportunity to cross examine the other.[1]  Defendants

---

[1] Although Defendants Kenneth and Frank Mitan were both represented by Joseph A. Artabane, Esquire at the arbitration hearings, each witness had an opportunity to "cross examine" the other witness at the hearings.  Mr. Artabane could have arranged for that, or could have asked

maintain—in their own words—that the arbitration testimony sought to be admitted contains references as to what each co-Defendant "did or did not do," what the Williams Fund "did or did not do," and "is incriminating because each Defendant at times describes the other Defendant as being responsible for the actions of the Williams Fund." (Def.'s Memo in Support 1.)  Yet, the arbitration testimony is incriminating as to each co-Defendant <u>not</u> because the statements <u>on their face</u> are incriminatory, but because the statements <u>may be</u> incriminatory <u>only when linked</u> to other evidence in the current trial.  For example, Kenneth's statements at the arbitration that Frank was responsible for certain actions of the Williams Fund are not <u>facially</u> incriminating—they are not a confession by Kenneth as to committing a crime, and they in no way implicate Frank in the commission of a crime.   The jury may find the statements <u>incriminating</u> when linked to the government's other evidence at trial.  Thus, such statements fall squarely within <u>Richardson</u>'s rule that they may properly be introduced at trial with limiting instructions to the jury.

  Additionally, the Third Circuit has made clear that a <u>Bruton</u> analysis is triggered only where "an admission of a co-defendant is so '<u>powerfully incriminating</u>' or '<u>devastating</u>' that a limiting instruction fails to adequately safeguard the defendant's Sixth Amendment rights." <u>United States v. McKee</u>, 506 F.3d 225, 249 (3d Cir. 2007) (emphasis added).  In <u>McKee</u>, Judge McKee held that where a contested co-defendant's statement was not a full confession, but merely provided evidence that supported a  "key element" of the government's case, <u>Bruton</u> was not implicated because "[t]he statements in question added little, if anything, to the totality of the

---

questions of one on behalf of the other, or vice versa, or could have secured other counsel if necessary for Frank to examine Kenneth or vice versa.

evidence against each defendant, the court gave appropriate cautionary instructions, and the circumstances are not such as to negate the effectiveness of those instructions." Id.  Here, similarly, the statements made in the arbitration testimony cannot be said to be "powerfully incriminating" or "devastating."  To the contrary, as previously discussed, the statements fail to even reach the level of even being facially incriminating, as they only become incriminating when linked with other evidence at trial.

Defendants have not cited a single case to support their Bruton argument.[2]  For the aforementioned reasons, the Court finds that Bruton was not violated by the statements made at the arbitration hearings being introduced by the government as party admissions under Rule 801(d)(2)(A).

### 2. Arbitration Testimony Introduced Against Both Co-Defendants

At the conclusion of the government's case, the Court ruled that the government had satisfied the admissibility of the arbitration statements of Frank and Kenneth introduced at the trial, and had satisfied the preponderance of evidence burden of Federal Rule of Evidence 104. The Court therefore ruled that all of the arbitration statements introduced into evidence were admissible against both Defendants as co-conspirator statements, constituting an exception to the hearsay rule pursuant to Rule 801(d)(2)(E).  For this reason, and as the case law makes clear, the

---

[2]Defendants cite to three cases, but not one supports Defendants' Bruton argument.  All three cases arise in different factual circumstances than the present case, thus making the analysis in each case distinguishable.  See Richardson v. Marsh, 481 U.S. 200 (1987) (analyzing Bruton in the context of a confession made to police, and holding that Bruton did not bar the confession from being admitted); Cruz v. New York, 481 U.S. 186 (1987) (applying Bruton in the context of a videotaped murder confession); Johnson v. Tennis, 549 F.3d 296 (3d Cir. 2008) (analyzing Bruton in the context of its applicability to joint-bench trials, and holding that Bruton applies only applies to jury trials);

arbitration statements are not "testimonial" in nature, and the Confrontation Clause is not implicated.

The Supreme Court in Crawford v. Washington, 541 U.S. 36 (2004), held that the Confrontation Clause bars the admission of "testimonial" out-of-court statements unless the declarant is unavailable, and the defendant had a previous opportunity to cross-examine the witness. Yet, Crawford also made explicitly clear that the Confrontation Clause is not violated if the out-of-court statements sought to be admitted are co-conspirator statements pursuant to Rule 801(d)(2)(E), because such statements are not testimonial. See Crawford, 541 U.S. at 57 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy."); see also Melendez-Diaz v. Mass., 129 S. Ct. 2527, 2539-40 (2009) (quoting Crawford for same); United States v. Hoffman, No. 04-0334, 2005 WL 762100, at *3 (E.D. Pa. Apr. 4, 2005) ("Crawford, in addressing testimonial statements, noted that 'statements in furtherance of a conspiracy' are not testimonial."). The Supreme Court later emphasized the fact that co-conspirator statements are not testimonial and thus do not implicate the Confrontation Clause:

> Bourjaily v. United States [a case decided in 1987, pre-Crawford] held that admission of [co-conspirator statements under Rule 801(d)(2)(E)] did not violate the Confrontation Clause because it "falls within a firmly rooted hearsay exception"—the test under Ohio v. Roberts, the case that Crawford overruled. In fact it did not violate the Confrontation Clause for the quite different reason that it was not . . . testimonial. The co-conspirator hearsay rule does not pertain to a constitutional right and is in fact quite unusual.

Giles v. California, 128 S. Ct. 2678, 2691 n.6 (2008) (emphasis added) (citations omitted). Thus, here, since the government has shown by a preponderance of evidence that the arbitration statements are co-conspirator statements under Rule 801(d)(2)(E), the statements are not

testimonial in nature, and Crawford and the Confrontation Clause are not implicated.

## II.     The Admission of IRS Records

On October 5, 2009, the government filed a Motion to Admit Evidence (Doc. No. 380) respecting IRS records showing that the Williams Fund, Water Harbor and C.P. Produce and Foods, which the government contends were mere "shell" corporations created to help Defendants perpetrate their crimes, did not have Employee Identification Numbers (EINs) and never filed tax returns during the relevant years (2005-2008).  In response, Defendant Kenneth Mitan filed a Brief in Support to Restrict Tax Information at Trial (Doc. No. 383) seeking to restrict the IRS records under Federal Rule of Evidence 404(b), which bars "[e]vidence of other crimes, wrongs, or acts."  On October 7, 2009, this Court entered an Order that provided, in relevant part:

> The Court will grant the government's Motion to Admit Evidence that the Defendants were in a position to, but did not secure an Employer Identification Number for certain entities that were involved in this case, and will also allow the government to introduce evidence that the Defendants were in a position to, but did not, file any tax returns for these entities, and that they were under an obligation to do so.  The Court rejects the Defendants' position that this is 404(b) material, and finds that it is intrinsic evidence directly related to the allegations in the indictment.

(Doc. No. 91 ¶ 5.)  At trial, testimony by IRS Agent Kelly established than an EIN existed for the Williams Fund, but that no returns for that EIN had been filed.  This Court sets forth its reasons for granting the government's Motion to Admit Evidence below.

### A.     The Government's Contentions

The government contends that the records are admissible as relevant evidence pursuant to Federal Rules of Evidence 401, 402, and 403, because the IRS records, along with evidence that the Williams Fund had no offices, staff, or separate divisions, and that the suspicious timing of

Water Harbor and C.P. Produce and Foods' incorporation, help the government show that the corporations associated with Defendants are "shell entities that existed to help the defendants funnel money out of the victim businesses." (Gov't Mot. to Admit Evid. 2.)  In particular, the government avers that the IRS records provide "[t]he best available evidence as to whether these entities had any independent and lawful purpose." (Gov't Mot. to Admit Evid. 2.)  The government also contends that "there is nothing unfairly prejudicial about this evidence." (Gov't Mot. to Admit Evid. 3.)

The government then avers that the evidence should not be excluded under, and is not governed by, Federal Rule of Evidence 404(b), because the IRS records "do[] not accuse either defendant of committing a crime or bad act in order to show conformity therewith." (Gov't Mot. to Admit Evid. 3.)  The government further contends that failure to obtain an EIN is not a "bad act" for Rule 404(b) purposes, because the act is that of the corporate entity, not a particular person at trial, and that the government does not intend to introduce evidence of Defendants' criminal liability for unpaid corporate tax obligations or for failure to file tax returns.  The government also avers that neither Rule 404(b) nor case law excludes acts of a corporate entity, and thus concludes that the evidence should be admitted notwithstanding Rule 404(b).

> B.   **Defendant Kenneth Mitan's Contentions**

Kenneth Mitan contends that this case is distinguishable from past cases in which the failure to file tax returns demonstrated a sham corporation, which he concedes is permissible, because here, "the income itself is uncontested," and the evidence in fact "shows potentially wrongful and criminal conduct." (Def. Br. in Support to Restrict Tax Info. at Trial 1 [hereinafter "Def's. Tax Br."]  Kenneth Mitan also avers that because he was neither a shareholder nor a

director in the entities, the admission of the IRS records "to tar and f[e]ather him with others' [bad acts]" would be "extremely prejudicial, and violative of Rule 403." (Def.'s Tax Br. 2.) Kenneth Mitan's argument seems to be that corporate officers are criminally liable for failing to file tax returns on behalf of the corporation, and thus, the IRS records are evidence of his alleged co-conspirators' "bad acts." Finally, Kenneth Mitan requests that if the Court decides to admit the IRS records, he be allowed to cross-examine those responsible, and if the government can demonstrate that "his co-defendant[] and uncharged co-conspirators committed tax violations," his trial be severed. (Def.'s Tax Br. 2.)

    C.    **Analysis**

Although Kenneth Mitan maintains that he was neither a shareholder nor a director of the three corporations for which the government seeks to introduce IRS records, the Superseding Indictment charges Kenneth Mitan with "controll[ing] various corporate entities, including the Williams Fund," for which one of his alleged aliases is listed as a shareholder, and using an alias that is listed as C.P. Produce and Foods's sole director (Superseding Indictment, Background ¶¶ 2, 5-6, Doc. No. 1). The government does not seek a Rule 404(b) ruling for this testimony.

The Third Circuit has clarified that intrinsic evidence may be admitted, and that "acts are intrinsic when they directly prove the charged conspiracy." United States v. Cross, 308 F.3d 308, 320 (3d Cir. 2002); see, e.g., United States v. Gibbs, 190 F.3d 188, 218 (3d Cir. 1999) ("Since the government introduced evidence of Gibbs's use of violence to further the illegal objectives of the cocaine conspiracy by removing threats to himself . . . , the District Court did not abuse its discretion in permitting this evidence to come in."); see also Fed. R. Evid. 404(b) advisory committee's note (clarifying that Rule 404(b) "does not extend to evidence of acts

which are 'intrinsic' to the charged offense). As this Court observed in a previous case, so-called "intrinsic" evidence is most often introduced in conspiracy cases, United States v. Comite, No. 06-0070, 2006 WL 3791340, at *6 (E.D. Pa. Dec. 21, 2006), as the government seeks to do here. The government previously filed a Motion in Limine to Admit Evidence Under Fed. R. Evid. 404(b), which did not include the IRS records (Doc. No. 138).

In "proving overt acts in a conspiracy," the government "is not limited by the specific acts listed in the indictment," United States v. Holck, 398 F. Supp. 2d 338, 373 (E.D. Pa. 2005); rather, evidence may still be "intrinsic" and therefore admissible if "the government has evidence of many instances of the allegedly illegal activity charged in the indictment, but has not charged each instance." Comite, 2006 WL 3791340, at *6.

In addition, notwithstanding Rule 404(b), courts have admitted evidence that individuals failed to file tax returns on behalf of corporations for which the individuals were directors or officers, on the basis that such evidence was being admitted to show criminal intent, and not criminal propensity.[3] Although most of those cases involve defendants who were charged with

---

[3] See, e.g., United States v. Prosperi, 201 F.3d 1335, 1338 (11th Cir. 2000) (finding that in a case involving tax and mail fraud, and counterfeiting, Rule 404(b) did not bar the admission of evidence that a Defendant-Attorney failed to fail a trust return for certain property and a corporate return for a client corporation, because such evidence demonstrated his criminal intent); United States v. Bok, 156 F.3d 157, 165-66 (2d Cir. 1998) (same for defendant charged with tax evasion and fraud, in which the uncharged acts of failing to file tax returns showed intent to evade the tax system and it was apparent that the defendant would dispute that issue); United States v. Mews, 923 F.2d 67, 69 (7th Cir. 1991) (same for defendant charged with filing a false tax return, because his history of failing to file tax returns "showed that he engaged in transactions for the purpose of evading income tax"); United States v. DeClue, 899 F.2d 1465, 1472 (6th Cir. 1990) (same for defendant charged with income tax evasion, because failure to file a corporate tax return is highly probative of the crime charged); Daraio v. United States, No. 07-4295, 2008 WL 2036808, at *2 (D.N.J. May 9, 2008) (same, because evidence established wilfulness in evading tax obligations); United States v. Ellis, No. 06-00065-CR-1, 2006 WL 3776379, at *4 (S.D. Ind. Dec. 20, 2006) (same for defendant charged with failing to account for

tax fraud, evidence of Defendants' failure to file corporate tax returns also demonstrates Defendants' criminal intent and "directly prove[s] the charged conspiracy," Cross, 308 F.3d at 320. The Superseding Indictment, inter alia, charges Kenneth Mitan with creating shell accounts through his various corporate entities, that Defendants used to facilitate their federal crimes (Superseding Indictment, Background ¶¶ 8, 13-15, Overt Acts ¶¶ 3-5, 15-17, & 22 , Doc. No. 1). Thus, evidence that the corporate entities did not file tax returns is probative of, and directly relates to evidence that the Williams Fund, Water Harbor, and C.P. Produce and Foods are sham corporations. This Court, therefore, concludes that the IRS documents the government seeks to introduce constitute "intrinsic" evidence that is not barred by Rule 404(b), and are not unfairly prejudicial towards Defendants. Accordingly, the IRS documents are admissible under Federal Rules of Evidence 401, 402, and 403. The Court entered an Order to this effect. (Doc. No. 91 ¶ 5).

### III.    Admission of Evidence Regarding Use of Actual or Threatened Litgation

The Court admitted evidence pertaining to the Mitans' purported use of actual or threatened litigation to further their conspiracy. This conduct is not alleged in the Superseding Indictment. As the Third Circuit has explained,

> There are two types of variations between the charges in an indictment and the evidence at trial: (1) amendments of the indictment when its charging terms are altered; and (2) variances, where the charging terms of the indictment are not changed but when the evidence at the trial proves facts materially different from those alleged in the indictment.

United States v. Daraio, 445 F.3d 253, 259 (3d Cir. 2006).

---

and pay over taxes withheld from employees' paychecks, because the failure to file individual and corporate tax returns was probative of state of mind on the charged violations).

> An indictment is constructively amended when, in the absence of a formal amendment, the evidence and jury instructions at trial modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged. Thus, a court cannot permit a defendant to be tried on charges that are not made in the indictment against him. The key inquiry is whether the defendant was convicted of the same conduct for which he was indicted.

Id. at 259–60 (citations, footnote, and internal quotation marks omitted).

> There is a variance where the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment. When there has not been a constructive amendment of the indictment but rather there only has been a variance between the facts alleged in the indictment and the evidence offered at trial, the proceedings at the trial will not have usurped the constitutionally guaranteed role of the grand jury. Instead, the concerns raised by a variance argument are the fairness of the trial and the protection of the defendant's right to notice of the charges against her and her opportunity to be heard.

Id. at 261 (citations and internal quotation and alteration marks omitted).

Applying these principles to this case, the Court concludes the government's evidence of Defendants' threats or use of litigation is neither an amendment nor a variance. Rather, it is intrinsic evidence which relates directly to the conspiracy and fraud alleged in the Superseding Indictment. Thus, the government may mention the evidence in its closing arguments, but not as a manner or means in carrying out the conspiracy or scheme to defraud.

BY THE COURT:

s/Michael M. Baylson
Michael M. Baylson, U.S.D.J.

O:\Criminal Cases\08-760 Mitan, us v\Mitan - Memorandum Admissability Evidence.wpd